JOHN J. KNICKERBOCKER *et al.*

*v.*

EMMA BENES.

*Opinion filed February 21, 1902—Rehearing denied April 4, 1902.*

1. RECEIVERS—*damages for torts of receiver's servants are part of the operating expenses.* Damages for injuries to person or property, caused by the negligence of a receiver or his servants or employees, are classed as part of the operating expenses and are payable out of the income, or, if necessary, out of the body of the property.

2. SAME—*receivership continues though different receivers act.* A receivership continues though successive receivers are appointed, and one receiver is liable, as receiver, for the negligence of his predecessor, as receiver, whereby another is injured, and the judgment for damages is in the nature of a judgment *in rem* and is payable out of the trust fund.

3. SAME—*when purchase of property on foreclosure does not relieve it of receivership charges.* Trustees under the will of one who procured the appointment of a receiver for property, thus creating a charge thereon for the expenses of the receivership, cannot relieve the property of that charge by purchasing it at a foreclosure sale under an encumbrance created by their testator, and for the payment of which he and his representatives were liable.

4. SAME—*when claim for damages for the negligence of receiver is not barred as to purchasers of property.* If one injured by the negligence of a receiver intervenes in apt time in the receivership proceeding to compel payment of her claim out of the receivership funds, the fact that the purchasers of the property at the foreclosure sale were not made parties to her intervening petition until more than seven years after the injury and more than two years after she came of age does not bar her claim as to them, where they were parties to the receivership proceeding as trustees under the will of the one who procured the appointment of the receiver and created the encumbrance, and acquired the fund out of which she was entitled to payment *pendente lite* and with notice of her claim.

*Knickerbocker* v. *Benes,* 93 Ill. App. 305, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming a decree of the superior court of Cook

county, requiring appellants, as trustees under the will of James J. Gore, deceased, to pay appellee $4500 for a personal injury which she received while in the employ of a receiver of certain property of said Gore, which injury was caused by the negligence of said receiver.

The pleadings, and the facts established by the proofs, are sufficiently stated in the decree rendered by the superior court, which is, in substance, as follows: Upon the intervening petition of Emma Benes, filed in the said cause on the 27th day of March, 1895, and the amended supplemental petition filed November 17, 1898, and upon the answer of the complainants thereto, and upon the original bill, and upon evidence, oral and documentary, heard and read on the hearing of said intervening petition, the court finds that on and prior to the 9th day of January, 1889, James J. Gore and Patrick H. Heffron were partners, and as such owned and conducted a hotel, known as "Gore's European Fireproof Hotel," in the city of Chicago, and that on said date said Gore filed his bill of complaint herein against the said Heffron, and therein prayed for an accounting and dissolution of said partnership; that on the 29th day of January, 1889, on motion of the said Gore, an order was entered herein appointing one James H. Rice receiver over the partnership property of said partnership, and by said order said receiver was directed to operate said hotel and continue said business; that thereupon said Rice qualified and entered upon the discharge of his duties, and continued to act as such receiver until on or about the 16th day of July, 1889, when he resigned; that thereupon, on motion of complainant, Gore, the defendant, Heffron, consenting thereto, one Nicholas D. Laughlin was appointed receiver over said partnership property, and by said order of appointment said Laughlin was directed to conduct the business of keeping said hotel, and from the receipts thereof pay such sums as may be necessary to discharge the current obligations incurred by him in the manage-

ment thereof; that on the 25th day of September, 1891, said complainant, James J. Gore, departed this life testate, and John J. Knickerbocker, one of the complainants herein, and Ellis Hagenbuck, another of the complainants herein, and one George G. Newbury, were appointed executors of and trustees under the last will and testament of said James J. Gore, deceased; that on the 22d day of October, 1891, the death of said Gore was suggested herein to the court, and thereupon an order was on said last mentioned date entered herein, substituting the said John J. Knickerbocker, George G. Newbury and Ellis Hagenbuck, executors under the last will and testament of the said James J. Gore, deceased, as complainants in this cause, and subsequently thereto said Knickerbocker, Newbury and Hagenbuck were discharged as executors under the said last will and testament, and upon such discharge they thereupon transferred to themselves, as trustees under said last will and testament, all of the estate of the said James J. Gore; that on the 14th day of April, 1896, the said Newbury resigned as such trustee, and on the 7th day of May, 1896, Willis Smith, one of the complainants herein, was appointed trustee under the last will and testament of the said Gore, to succeed said Newbury; that said Laughlin, upon the date of his appointment, entered upon the discharge of his duties as such receiver, and thereafter continued in the discharge of such duties until the first day of January, 1895, at which time he resigned, and thereupon an order was entered herein appointing one William M. Tabor receiver in said suit; that Tabor qualified and discharged his duties as such receiver until the 20th day of February, 1895, when he departed this life, and thereupon one Walter W. Edsall was duly appointed receiver, and has ever since that time continued, and still continues, to act as such receiver; that prior to the filing of the bill of complaint in this suit said James J. Gore and Patrick H. Heffron had become indebted, and to secure said indebtedness had

executed a trust deed upon certain real estate, including also the furniture and other property in the hotel, and the leasehold interest in the office building known as the "Open Board of Trade Building;" that thereafter, on the 6th day of April, 1891, a suit was commenced to foreclose said trust deed, and thereupon a decree of foreclosure was entered in said suit; that said decree provided that complainant, or any of the parties to said cause, might become the purchaser or purchasers at said sale; that prior to and in the month of March, 1894, said Nicholas D. Laughlin, as such receiver, had accumulated from the proceeds of said hotel, and in said month of March, 1894, had in his hands of such proceeds, upwards of $70,000, and that on the 14th day of March, 1894,—the day before the sale of said property under said foreclosure decree,—an order was entered herein directing said receiver to pay the sum of $50,000 upon said foreclosure decree to the master making said sale; that the next day thereafter, to-wit, on the 15th day of March, 1894, the said hotel building and leasehold, and the furniture and other property of said hotel, were sold, under and in pursuance of said foreclosure decree, to satisfy the balance still remaining unpaid after the payment thereon of said $50,000 by said receiver; that said hotel building and leasehold were bought by the complainants for the sum of $95,000, and said furniture and other property above described, in said hotel building, were also at said foreclosure sale sold to the complainants herein for the sum of $9250, and which said sum was paid by said complainants; that thereafter, on the 22d day of March, 1894, the said sale was reported to this court by the master and approved, and on March 28, 1894, an order was entered herein directing said Laughlin, receiver, to surrender the possession of said furniture and other personal property above described, in said hotel, to the complainants, as purchasers thereof under said decree; that from the said order directing said receiver to surrender said property to said

complainants the said defendant, Heffron, perfected an appeal to the Appellate Court in and for the First District of Illinois, and was required to and did give bond in the sum of $10,000 to the complainants for the payment of any damages they might sustain by reason of said appeal; that said order was affirmed by the Appellate Court January 28, 1895, and said property was delivered by the receiver to said complainants on or about July 5, 1895.

The court further finds, that after paying the above mentioned $50,000 on said decree, and during the months of March and April, 1894, the said receiver paid out, under the order of the court, various other sums of money, aggregating nearly the entire amount of money in his hands as such receiver; that the greater portion of said payments was made on account of taxes on said property, ground rent for leasehold, and interest upon the indebtedness due and owing upon the above mentioned Open Board of Trade building, and all of said payments, including said $50,000, were made on account of the indebtedness incurred and owing by said Gore and Heffron, and for which the said Heffron and the estate of said Gore were liable; that pending said appeal, and until the 6th day of December, 1894, the said Laughlin, as receiver, continued in possession of said property, and continued to conduct said hotel in the same manner as he had done, as such receiver, prior to the sale of said property under said decree; that on the 6th day of December, 1894, said receiver, pursuant to the order of this court and upon the petition of the complainants, joined in a lease of said hotel, and the furniture and fixtures thereof, to Messrs. Summerfield and Bedard, and that said Summerfield and Bedard entered into possession of said hotel, and of the furniture and other property thereof, and continued to conduct said hotel business until July 1, 1895, and on that date said complainants took possession of said property and sold and transferred said hotel, and said furniture

and other personal property, to one Frank Sayre Osborne; that said complainants never paid over to the receiver of this court any money derived from said sale, and that said furniture and other personal property above described are now out of the possession of said complainants and beyond their control; that on the 15th day of July, 1895, there was no money in the hands of the receiver in this cause, all of the money in the hands of the said receiver having been paid out prior thereto, pursuant to the orders of the court, and that there is not now, and never has been, in the possession of the receiver in this cause since said 15th day of July, 1895, any money or property whatsoever.

The court further finds that Emma Benes, the intervenor herein, was, on or about the 8th day of May, 1891, employed by Nicholas D. Laughlin, as receiver, as aforesaid, to work in the laundry of said hotel, and on the 29th day of May, 1891, while she was in the exercise of ordinary care, her right hand and arm were, without her fault, drawn into one of the steam mangles used in said laundry, and her arm was thereby so crushed that it became necessary to amputate the same about five inches below the shoulder joint, and it was so amputated; that on the 10th day of September, 1891, she commenced suit in this court against said James J. Gore and Patrick H. Heffron to recover damages for said injury, and afterwards, to-wit, on the first day of June, 1892, she commenced suit to recover damages for said injury against John J. Knickerbocker, George G. Newbury and Ellis Hagenbuck, as executors and trustees of the estate of James J. Gore, deceased; that said Nicholas D. Laughlin, as such receiver, was made a party defendant to said suit May 28, 1894; that said suit was tried and a verdict was rendered for the plaintiff, and a new trial was granted on motion of the said receiver, Nicholas D. Laughlin, and said John J. Knickerbocker, George G. Newbury and Ellis Hagenbuck, as trustees as aforesaid, and while said

suit at law was still pending in this court on the law side thereof, said Emma Benes, on the 27th day of March, 1895, by leave of this court filed her intervening petition herein and filed therewith a copy of her amended declaration in said clause, and asked in her said intervening petition that the said copy of her said declaration be taken and treated as a full statement of her claim; that on the 17th day of November, 1898, said Emma Benes, by leave of the court, filed an amendment to her said original intervening petition; that the injury to the intervening petitioner, as set forth in her declaration, was caused by the negligence of the defendant, Nicholas D. Laughlin, as receiver, as aforesaid, as alleged in her declaration, and without any fault of the said intervening petitioner; that the evidence sustains the declaration of the intervening petitioner and sustains her claim as set forth in her intervening petition as amended, and that she has sustained damages, by reason of the injury aforesaid, in the sum of $4500; that her said claim for damages having accrued while said Nicholas D. Laughlin was in charge of said hotel as such receiver, as aforesaid, became and was and should be treated and regarded as one of the operating expenses of said receivership, and therefore became and is hereby declared to be a lien upon said hotel and hotel business, and upon all the furniture and fixtures thereof, and all the proceeds thereof, from and after the date of said injury, to-wit, from the 29th day of May, 1891; that said suits at law were commenced by said Emma Benes during her minority, by her next friend, and that she attained her majority on the 20th day of April, 1893.

The court further finds that the $50,000 so paid out of the funds in the hands of said receiver, as aforesaid, on said mortgage indebtedness of said Gore and Heffron, was mostly accumulated from the proceeds of the said hotel and hotel business, and that said hotel and hotel business, and the furniture and other property aforesaid thereof, were purchased by said complainants herein,

and that said payment of said $50,000 on said mortgage indebtedness was reduction, by so much, of the mortgage indebtedness, and was equivalent to a payment to and for the benefit of the estate of said Gore, represented by the complainants herein; that complainants, at the time of said payment of said $50,000, had actual notice of the demand and claim of said intervening petitioner; that said complainants purchased said hotel business, furniture and other property aforesaid, subject to the aforesaid lien of said intervening petitioner arising out of her said claim for damages, and is a part of the operating expenses of the said Nicholas D. Laughlin in operating said hotel and hotel business; that the reasonable value of the furniture and other property above described, of said hotel, on the first day of July, 1895, when they were taken by said complainants out of the hands of the receiver herein, was the sum of $9250, and that said sum is now in the hands of said complainants, less the sum of $1170.40 paid out by complainants, pursuant to the orders of the court, on claims adjudicated against said receiver herein, leaving a balance of that fund still in the hands of said complainants, subject to the order of the court, as aforesaid, of $8079.60; that said intervening petitioner, Emma Benes, ought not to be barred from recovering herein by reason of anything contained in the plea of the Statute of Limitations filed herein January 30, 1899, and reserved by the court by its own order of February 1, 1899, for further hearing on final argument, and the said plea is by the court overruled; that said Patrick H. Heffron received no portion of the said furniture and other property above described, taken from the possession of the receiver, as aforesaid, and has derived no benefit from the $50,000 paid out by the receiver, as aforesaid, for the benefit of the real estate of the said complainants, wherefore it is ordered, adjudged and decreed that said intervening petition be dismissed as to the said Patrick H. Heffron.

It is further ordered, adjudged and decreed that the said John J. Knickerbocker, Ellis Hagenbuck and Willis Smith, as trustees of said James J. Gore, deceased, pay to Emma Benes, or to Jones & Lusk, her solicitors, within three days from the entry of this decree, said $4500, and the same is hereby declared to be a lien upon the said hotel and hotel property, and leasehold interests pertaining thereto, and upon the furniture and fixtures thereof that may now be in the possession or control of said complainants as trustees of the estate of said Gore, deceased, or the title to which may yet remain in said complainants as such trustees; that if the said John J. Knickerbocker, Ellis L. Hagenbuck and Willis Smith, trustees under the last will and testament of said James J. Gore, deceased, shall fail to make the said payment within three days after the entry of this order, as aforesaid, then this court will, upon proper application, make such further order for the enforcement of this order as may be necessary or proper, and for the purpose of enforcing payment of said $4500 this court does hereby retain jurisdiction of all of the parties hereto.

JOHN W. SMITH, for appellants.

JONES & LUSK, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

We are of the opinion that the facts in this case, as found by the decree set out in the statement of the case, were established by the evidence. No question is raised as to procedure, and it only remains to be determined whether, upon the facts found, there is any error of law in the decree.

In *Knickerbocker* v. *McKindley Coal Co.* 172 Ill. 535, (a case growing out of the same receivership,) this court said (p. 546): "When Gore, whom appellants represent, procured the appointment of a receiver over the prop-

erty, he created a charge thereon for the expenses of the receivership, hence the appellants cannot relieve the property of that charge by purchasing it at a foreclosure sale under an encumbrance created by Gore, and for the payment of which he and his representatives are liable." And in that case it was held that the appellants, as representatives of Gore, were liable for coal purchased and used by the receiver in running the hotel. That case differs from this in the nature of the liability, and perhaps in other respects which will be mentioned in another place; but the same facts appeared in that case as in this, establishing the liability of appellants, as such trustees of the property in question, for the expenses of the receivership.

It appeared that Gore's estate received the benefit of $50,000 derived from the rents and profits received by the receiver, and also received the furniture and furnishings of the hotel, amounting in value to upwards of $8000,— in other words, that the appellants, as such trustees, had received from the fund in the hands of the receiver, and which was burdened with the expenses and liabilities of the receivership, an amount of money and property largely in excess of such liabilities. In *Bartlett* v. *Cicero Light Co.* 177 Ill. 68, we held that damages for injuries to persons or property during the receivership, caused by the torts of the receiver's agents and employees, are classed as a part of the operating expenses and are payable out of the income, or, if necessary, out of the *corpus*. (See cases there cited.) We are of the opinion that the injury to appellee was caused, as found by the decree, by the negligence of the receiver in operating the laundry where said appellee was hurt, and that the income and property which he received, and which to a large amount was used to pay Gore's debts or was received by his trustees, was burdened with the liability to satisfy whatever damages appellee should recover for such injury. It was adjudged that she should recover $4500, and no reason is

perceived why Gore or his trustees should not, to the extent of the money and property of which they received the benefit from the receiver, be required to pay these damages to appellee. It appears that there is nothing now in the hands of the receiver with which to pay them. It is immaterial that successive receivers had been appointed. The receivership continues though the personnel of the receiver may be changed. High on Receivers, (3d ed.) sec. 395*b*. See, also, *McNulta* v. *Lockridge*, 137 Ill. 270, where it was held a receiver is liable, as receiver, for the negligence of his predecessor, as receiver, whereby another is injured, and that the judgment is in the nature of a judgment *in rem*, and is payable out of the trust fund.

This brings us to the point upon which appellants chiefly rely for a reversal of the decree, and that is, that appellee's claim was barred by the Statute of Limitations. The plea alleged and the record shows that the appellants were not named as parties to appellee's intervening petition until more than seven years after the injury and two years after appellee came of age. The amended and supplemental petition was filed November 17, 1898, and then for the first time she named appellants, the trustees, as parties. But she had intervened in a cause to which they were parties, and filed her petition to compel payment out of a fund which was bound for such payment, in apt time, and these trustees received the benefit of such fund. They were not made parties as persons originally liable for her injury, but only as persons who were already parties to the original cause in which she had intervened, and who had acquired the fund or property *pendente lite* out of which she was entitled to have her claim paid. We are of the opinion that the statute does not apply. The proceeding was a continuous one, and the case is not governed by the principle that as to a new party added to a pending case the cause is to be considered as first commenced when he is made

such party.  And we cannot regard as applicable the
many cases at law cited by appellants to the point that
if the plaintiff, by amendment, adds a new cause of action
or a new party after the statute has run, such new cause
of action is barred and the whole cause is barred as to
such new party.  No new cause of action was added by
the supplemental petition and no new parties were added
to the pending cause.  Appellants became parties on the
death of Gore and had notice of appellee's claim through
her intervening petition filed in the case, containing a
copy of her declaration which she had filed in her action
at law against the receiver.

We are of the opinion that appellants have not sus-
tained their assignments of error, and the decree will
therefore be affirmed.                *Decree affirmed.*