BEACH et al. v. MACON GROCERY CO. et al.

(Circuit Court of Appeals, Fifth Circuit. October 17, 1903.)

No. 1,267.

1. RECEIVERS—UNAUTHORIZED TAKING OF PROPERTY—COSTS AND EXPENSES.

  Where property of a defendant is taken from his possession by a receiver against his consent under an erroneous order which he successfully resists in an appellate court, he is entitled to the return of such property without charge of any kind against it or against him by reason of the proceedings. He cannot justly be charged with the cost of keeping stock so taken on the ground that it was not an expense of the receivership, but one incurred for the preservation of the property, and especially where he was actually subjected to loss by being deprived of the use of the stock.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of Georgia, in Bankruptcy. See 116 Fed. 143; 120 Fed. 736.

John P. Ross, for petitioners.

Olin J. Wimberly (John I. Hall, on the brief), for respondents.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This litigation was begun by the creditors of Asa N. Beach filing a petition in involuntary bankruptcy and an ancillary bill in the District Court against him, praying the appointment of a receiver to take charge of his property. It was alleged that Julia M. Dixon claimed to be the owner and was in possession of a large part of the property, but that her claim was fraudulent and unfounded, and that the property was in fact owned by Asa N. Beach. An ex parte order was made appointing a receiver as prayed for. Answers were filed by Beach and Miss Dixon denying the averments of the bill, and motions were made seeking the discharge of the receiver. These motions were denied by the court. On the application of the receiver, and against the objections of Miss Dixon, the receiver was ordered to sell part of the property, which he did, and the sale was confirmed. Beach and Miss Dixon joined in a petition to superintend and revise these orders. Their petition was granted by this court, and the several orders of the District Court were reversed. In the sale by the receiver Miss Dixon had bought the property which was claimed by her, and regained possession of it. This court directed that where parts of the property claimed by her had been sold by the receiver and purchased and paid for in cash by her, the receiver should be directed to return to her the money so paid by her, and that she be allowed to retain possession of the property as original claimant in adverse possession, and not as purchaser at the sale. On the question of the costs and expenses of the receivership the court made an order taxing the Macon Grocery Company, Inman Smith & Co., and J. Regenstein, the petitioners who instituted the proceedings in bankruptcy and filed the ancillary bill, "with the costs in this court, and with the costs of the proceedings on the ancillary bill to appoint a receiver, and with the costs of the receivership, including the com-

pensation of the receiver and his expenses, to be ascertained and allowed by direction of the District Court." Beach v. Macon Grocery Company, 116 Fed. 143, 53 C. C. A. 463.

The mandate of this court having gone to the District Court, questions were raised as to the construction of the order made by this court. The property seized by the receiver consisted in part of 15 mules, 1 horse, 2 mares, 2 colts, and some cattle and hogs. The receiver took this property, or nearly all of it, from the possession of Miss Dixon on a farm in the country, and carried it into the town, where it was kept at a cost of "$13 or $14 a day." It was agreed that the expenses of the keeping of this stock and feeding it while so in the possession of the receiver amounted in the aggregate to $325. Construing the order and mandate of this court, the learned judge of the District Court adjudged that the petitioners and complainants in the bankruptcy court should pay to the defendants in the court below "the amounts heretofore allowed and paid out by the receiver, out of the funds in his hands, for costs of the receivership, embracing the receiver's compensation and the receiver's own expenses." But the learned judge added "that the same does not embrace or apply to the expenses of the receivership in the necessary preservation and keeping of the estate and property in his hands, which last it is ordered and adjudged is a proper charge against the fund, and shall be deducted from the amount which is to be refunded." Beach and Miss Dixon, defendants in the court below, filed the petition that is now before the court seeking to revise this order. In addition to reciting the facts relating to the order sought to be revised, reference is made to the record in the first case (116 Fed. 143, 53 C. C. A. 463), and the record in that case is made a part of the petition.

The District Court held, as we have stated, that the expenses of the receivership in the necessary preservation and keeping of the estate and property in his hands should be deducted from the amount which the receiver was to refund to the defendants. Construing that order by the record in the case, it means that the receiver should retain $325, the amount paid out for keeping the stock which had been taken from the defendants' farm by the receiver and kept by him, as he states in his report, at a cost of $13 or $14 a day. It will be observed that the order of this court was not confined to the compensation of the receiver and the costs of the receivership. It includes also "his expenses." As no particular expense or expenses are enumerated, the order necessarily includes all of the expenses of the receivership. That it was not intended that any part of the money paid into court by Miss Dixon to obtain possession of her property should be retained by the receiver on any pretext is clearly shown, we think, by the third paragraph of the order. It is there said that the receiver should be directed to return to her the money so paid by her, and that she be allowed to retain possession of her property she had bought at the receiver's sale as original claimant in adverse possession, and not as purchaser at the sale. It is not ordered that the receiver be directed to return the money, less any expenses or costs of the receivership, or less any charges or disbursements. The plain direction is that her money should be returned to her. We think, therefore, that a

proper construction of the order and mandate of the court, considering both sections 3 and 6 of the order, does not permit the receiver to retain the $325 expenses paid by him in taking care of the stock.

It is a principle of general application that, if the appointment of a receiver is erroneous or void, and the adverse party does not acquiesce in it, but continues to contest it to a successful termination, any compensation which may have accrued to the receiver in the meantime, and his expenses incurred in the administration of the estate, should be taxed to the parties who applied to have the appointment made. On the other hand, if the appointment of the receiver is sustained, and the applicant obtains the relief sought by him in the pending suit, the items of expenses growing out of the receivership are proper charges against the unsuccessful defendants, and are chargeable and payable from his property in the possession of the court. We do not understand that the learned counsel for the respondents controverts these general rules. His position is that, the expenditure in question, having been made to preserve the property, is not an expense of the receivership within the meaning of the mandate, and that under the circumstances of this case the $325 paid to feed and care for the stock is not "an expense of the receivership." Authorities are quoted to sustain this contention. Excerpts from three cases are quoted. On examination of the cases we think that they do not sustain the contention.

The point decided in Cassidy v. Harrelson, 1 Colo. App. 458, 29 Pac. 525, is but an affirmance of the general principle that, "a receiver having been appointed by the court on application of the interveners in a cause wherein they were not entitled to intervene, the costs incident to the appointment were properly chargeable against them"; that is, against the unsuccessful parties. The court did say, as quoted by counsel, in the course of the opinion:

"It is probably true that there are many items of expense which would be incurred in the care and custody of the cattle, in the shape of ordinary expenses incident to the running of the herd, which could not legitimately be taken as a part of the costs of the receivership. Under the circumstances the only costs which should be taxed against the interveners because of the application are those which are the legitimate and unavoidable incidents to the appointment."

The statement of the case shows that the cattle referred to were running on what is known as the "Carizo Range," an extensive pasture, and that the order appointing a receiver was "based on a consent filed." In the case at bar the defendants resisted the appointment until they had it vacated. In the Colorado case, the possession of the cattle was merely technically changed without inconvenience to the defendant, and this done by a consent order. In the case at bar stock needed on the farm for the plow, and fully able to earn their keep, were taken from the possession of the defendants.

In People v. Jones, 33 Mich. 303, the receiver made certain expenditures which were allowed by the court, and counsel quote the case as being analogous to the case at bar. The case can have no weight in this connection, because the facts are not analogous, and for the further and conclusive reason that the court in allowing the credit

claimed by the receiver said that it was proper to allow them, "there being no objection urged to the allowance of these expenditures."

The only other case quoted by counsel is Weston v. Watts, 45 Hun, 219. In that case the opinion of the court was delivered by Daniels, J. It contains a strong, and, we think, a correct, statement of the general principles which should govern in taxing the costs and expenditures of receivers. The court said:

"To take a person's property from him by an unauthorized proceeding, and place it in the hands of a receiver, and then subject him to the expenses of the proceeding, would be very transparently unjust, even if the courts had the power to do that. Cases are not uncommon where the result would be ruinous to the injured individual."

After citing and commenting on numerous cases which sustain the general rule, the court disposed of the question before it, saying:

"The claim now made in behalf of the receiver has, by no law, been imposed upon the defendant. Neither is there any equitable principle which should require him to pay, before he can secure a return of his property, the expenses of the unlawful proceeding by which it has been taken and withheld from his possession. To require that payment from him or his property would be a wrong which the court has neither the power nor the disposition to inflict upon him. It may be a hardship upon the receiver himself, but it is one of the risks which he has voluntarily assumed. He could have avoided it by declining to accept the appointment or protected himself against the loss of his commissions and expenses by first requiring security from the plaintiffs for their payment. If they cannot now be made to pay, it is more just and equitable that the receiver shall be deprived of his fees and expenses than it would be to require the defendant to defray the expenses of an unauthorized proceeding, and the cost of depriving him thereby of the possession of his property."

From the concurring opinion of Bartlett, J., counsel quote a sentence to which our attention is called:

"There might be cases where a receiver was erroneously appointed, but not under such circumstances as to make the appointment absolutely void, which would warrant an order that his disbursements be paid out of the fund; as, for example, where the property consisted of a herd of cattle for which the receiver had to buy fodder. In such a case it would be fair and just to charge the successful party with the cost of feeding, for he would have had to incur it if the animals had remained in his own custody."

This is a mere illustration used by the learned judge in a case which did not involve the question. The illustration refers to a herd of cattle, excluding the idea of horses or mules for the plow. "That there might be cases" where such rule would apply may well be admitted, for such a case would occur, for example, where the receiver was appointed by consent. But when dealing with the real question before the court Bartlett, J., in the same opinion, held that "it would be a pretty severe rule, even if constitutional, which should compel a litigant to pay the expense of having his own property illegally taken out of his custody for a while."

We find no authority that indicates that it would be just or equitable to make the expenses in question a charge upon the funds in the hands of the receiver. The receiver was appointed by an ex parte order. He went to the farm of the defendant, and took possession of her property. The larger part of it was such property as was useful and needed on the farm. It is a matter of common knowledge that horses

and mules for the plow are worth more than their food during the plowing season. It appears from the record in a petition filed by the receiver that Miss Dixon was willing to keep and feed the stock after it was seized if she were allowed to have the mules and horses worked on the farm. It is a matter of common knowledge that it is much less expensive for the farmer to take care of his stock upon the farm than it is to board them at a livery stable. If it should be held that, although the defendant succeeded in having reversed and set aside the order appointing the receiver, he was responsible for the expenses of the receiver in buying feed for the stock, the application of such rule, it seems to us, would lead in many cases to the greatest injustice. If the litigation was protracted, and some considerable time elapsed before the order appointing the receiver was vacated, the expenses would often more than equal the value of the property. Besides, such charge once being allowed upon the theory that it is a charge necessary to the preservation of the property, other charges could come in on the same principle. Blacksmiths' bills and veterinaries' accounts and the like would soon be insisted on as coming within the rule. We cannot sustain such contention. The property having been taken from the defendants against their consent under an erroneous order, which they resisted successfully in an appellate court, the only proper course is to return the property without charge of any kind against it or against the successful defendants. The defendants should be put in their former condition as nearly as possible. Instead of any sum being taxed againt the defendants under such circumstances, they would be entitled in some jurisdictions to recover damages, in a proper action, for being deprived of the use of the property. The petitioners who instituted the proceedings and secured the appointment of a receiver are properly and equitably chargeable with the costs and expenses incurred by their wrongful application. In the event of their insolvency, any expenses incurred by the receiver should fall on him, and not on the defendants. He need not become receiver unless he chooses, or he may require a bond of indemnity before accepting the position. In a case, therefore, where the receiver has been wrongfully appointed, and the order subsequently vacated, it would be more equitable that the receiver himself should sustain the loss or expenses of the receivership paid by him than that they should be taxed to the successful defendants.

It is ordered that the decree of the District Court of date March 9, 1903, be so revised and amended that no deduction for any expenses of the receiver for keeping property of A. N. Beach or Julia M. Dixon be made from the amount which should be refunded to said defendants in the court below pursuant to the previous opinion and mandate of this court. The costs of this court and of the District Court must be paid by the respondents herein.