## In re INDEPENDENT MACHINE & TOOL CORPORATION, Inc.

### (Circuit Court of Appeals, Second Circuit. April 24, 1918.)

### No. 226.

1. BANKRUPTCY ☞474—RECEIVERS—APPOINTMENT—OBJECTIONS.

 Where an alleged bankrupt, on the filing of an involuntary petition, consented to the appointment of a receiver without the bond required by Bankruptcy Act, § 3(e), having been given, it cannot, the petition having been dismissed; object to payment of necessary disbursements out of the funds in the receiver's custody, on ground that appointment was not warranted under section 2 (3).

2. BANKRUPTCY ☞474—RECEIVERS—APPOINTMENT.

 The appointment of a receiver on an involuntary petition in bankruptcy cannot be treated as unauthorized, and rendering the receiver chargeable with expenses, etc., because the alleged bankrupt was adjudged solvent, for the rules governing ordinary receiverships are not applicable to such appointments under the Bankruptcy Act.

 Rogers, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the Independent Machine & Tool Corporation, Incorporated, alleged bankrupt. On an involuntary petition in bankruptcy against the alleged bankrupt a receiver was appointed. The alleged bankrupt having been found solvent, the petition was dismissed, and the receiver directed to turn over to the alleged bankrupt all its property, except so much as might be necessary to pay obligations incurred in performing the duties of the receivership; and the alleged bankrupt petitions to revise such order. Order affirmed.

Horace London, of New York City, for alleged bankrupt and petitioner.

A. H. Simon, of Brooklyn, N. Y., for petitioning creditors.

B. Rembaugh, of New York City (Mary R. Towle, of New York City, of counsel), for respondent.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. October 3, 1917, a petition in involuntary bankruptcy was filed against the Independent Machine & Tool Corporation, Incorporated, and on the same day the petitioning creditors applied to the court for the appointment of a receiver, without giving any bond. An order on consent was made appointing Bertha Rem-

baugh temporary receiver, reciting that the appointment was necessary to preserve the assets. October 9 the alleged bankrupt demanded a jury trial. December 22, the jury having found that the alleged bankrupt was solvent, Judge Manton entered an order dismissing the petition, with costs, and directing the temporary receiver to turn over to the alleged bankrupt all its property in her possession, except so much as might be necessary to pay obligations incurred by her in performing the duties of the receivership.

This is a petition to revise the order. The temporary receiver had come into possession of $812.56, had disbursed $178, owed $415, and was ready to pay over the balance of $219.56, without asking for any compensation, to the alleged bankrupt, who claimed that she should be required to turn over all the moneys that had come into her hands.

[1, 2] Receivers should not be appointed, unless it is "absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition until it is dismissed or the trustee is qualified." Section 2 (3) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 545 [Comp. St. 1916, § 9586]); In re Oakland Lumber Co., 174 Fed. 634, 98 C. C. A. 388. This was the ground upon which the temporary receiver was appointed in this case. Section 3(e) (Comp. St. 1916, § 9587) provides an effectual protection for an alleged bankrupt as follows:

"Sec. 3. * * * (e) Whenever a petition is filed by any person for the purpose of having another adjudged a bankrupt, and an application is made to take charge of and hold the property of the alleged bankrupt, or any part of the same, prior to the adjudication and pending a hearing on the petition, the petitioner or applicant shall file in the same court a bond with at least two good and sufficient sureties who shall reside within the jurisdiction of said court, to be approved by the court or a judge thereof, in such sum as the court shall direct, conditioned for the payment, in case such petition is dismissed, to the respondent, his or her personal representatives, all costs, expenses, and damages occasioned by such seizure, taking, and detention of the property of the alleged bankrupt.

"If such petition be dismissed by the court or withdrawn by the petitioner, the respondent or respondents shall be allowed all costs, counsel fees, expenses, and damages occasioned by such seizure, taking, or detention of such property. Counsel fees, costs, expenses, and damages shall be fixed and allowed by the court, and paid by the obligors in such bond."

If the alleged bankrupt, instead of opposing or moving to vacate such an order, consents to the appointment of a receiver without bond, he cannot object if the petition be dismissed to the payment of necessary disbursements out of the funds in the receiver's custody. The provision of the act, being for his benefit, may be waived. As it consented in this case to the entry of the order made, it cannot complain either that a receiver was appointed or that she was appointed without bond.

Some authorities are cited which hold that in ordinary civil suits the receiver's rights depend upon whether the appointment was rightly made, and that if it is vacated he cannot look to the party whose property was wrongfully taken for his expenses or compensation. We think they do not apply. The Bankruptcy Act provides a system for insuring the equal distribution of a bankrupt's assets among his creditors. The specific case of an appointment continuing until the petition be dis-

missed is covered. It expressly contemplates that the status quo in some cases where the person proceeded against has not been and may never be adjudicated must be maintained. The claims of creditors might be utterly defeated, unless the assets were taken out of the alleged bankrupt's possession. An appointment in such case cannot be described as unauthorized, or its propriety be made to depend upon the subsequent adjudication of the alleged bankrupt. The expense of the appointment should be imposed upon the petitioning creditors in the first instance (In re Lacov, 142 Fed. 960, 74 C. C. A. 130); but the receiver, who is acting as an officer of the court, should not be chargeable with expenses necessarily incurred in the performance of his duties. It cannot here be said, as it may be in ordinary civil actions, that the taking of a man's property from him is wrongful, unless finally adjudicated to be rightful, because the act expressly provides for a necessary taking, even if the petition be ultimately dismissed and the receivership vacated. Nevertheless the appointment and the taking are to carry out the purposes of the Bankruptcy Act, and are rightful, whether the alleged bankrupt be subsequently found to be solvent or insolvent.

The order is affirmed.

ROGERS, Circuit Judge. (dissenting). I am unable to concur in the opinion of the majority of the court. In this case a receiver was appointed to take possession of the assets of a corporation upon the allegations of creditors that the corporation was insolvent, and it has turned out that the representations thus made were not true, and that the corporation was all the time solvent. It is, of course, apparent that a very serious error has been committed. This court (In re Oakland Lumber Co., 174 Fed. 634, 98 C. C. A. 388) called attention to the fact that the Bankruptcy Act limits the appointment of receivers to cases where the "it is absolutely necessary" for the preservation of the estate. We then pointed out that the evidence justifying such an interference with the rights of property must be clear, positive, and certain. The power to interfere and deprive one of his property is not to be exercised except in the clearest cases.

The question which is herein presented, however, grows out of the claim which the alleged bankrupt makes that, since it has been determined that it is solvent, it is entitled to receive all the assets which came into the receiver's possession since the filing of the petition in bankruptcy, including any and all moneys that came into her possession, irrespective of what she had paid out or had obligated herself to pay out. In Matter of Lacov, 142 Fed. 960, 74 C. C. A. 130, this court had before it the question whether petitioning creditors are liable for the expenses of a receivership in a case where, upon commencing a proceeding against a debtor to have him adjudicated a bankrupt, they have applied to the court and obtained the appointment of a receiver of his property, and the proceeding is subsequently dismissed as unfounded; the receiver meanwhile having entered upon his duties, taken charge of the property, and incurred expenses. We then held that the petitioning creditors are so liable, notwithstanding the fact that there is no express provision in the Bankruptcy Act which authorized the court of bank-

ruptcy to compel petitioning creditors to pay the costs of the receiver-ship under such circumstances. The power of the court was based upon its implied authority to require the creditors to bear the expenses of a proceeding which they instituted without sufficient cause, and in the course of which they invoked the court's assistance, and asked it to put its machinery in motion for their benefit in such a way that expenses accrued, which had to be borne either by them or the adverse party.

The above case has determined that, as between the creditors and the party over whose property a receivership has been created wrongfully upon their application the expenses connected therewith must be borne by them. But the question now presented is whether under such circumstances, as between the receiver and the party wronged, the former's expenses and compensation shall be paid out of the funds which came into his possession. This is a very different question from that propounded in the Lacov Case. The alleged bankrupt has petitioned the court for the return of the entire property which came into the possession of the receiver. The creditors are not here, and no relief is asked as respects them. It is to be noted that there is not a word in the record which discloses whether the creditors upon whose application the adjudication was made and the receiver appointed are solvent or insolvent.

The Circuit Court of Appeals in the Seventh Circuit has held in Re Hill Co., 159 Fed. 73, 86 C. C. A. 263 (1907), that after a dismissal of the petition for adjudication of bankruptcy it is within the power of the court to award payment for expenses or compensation of the receiver out of the funds in the custody of the court. The facts were that creditors filed a petition in bankruptcy against the Hill Company and a receiver was appointed. Issues were raised only under the petition for involuntary adjudication, and the hearings were protracted before the master and the District Court, which finally resulted in a dismissal upon the ground that the corporation was not subject to adjudication as a bankrupt. This, upon appeal to the Circuit Court of Appeals, had been affirmed. The custody and service of the receiver had extended from September 21, 1905, to February 1, 1907, or a period of 16 months. The application for the receiver, as distinguished from the application for adjudication of bankruptcy, does not seem to have been resisted; and during the period the receiver was in possession several orders of the court, which recited the consent of the alleged bankrupt, were entered which sold certain of the property and leased certain other portions of the property. In February, 1906, and prior to the decision of the Circuit Court of Appeals adjudging that the company was not subject to adjudication as a bankrupt, it executed an assignment of all its property in accordance with a statute of the state in which it was incorporated; and an order was entered in the District Court which directed the receiver to turn over to the assignee the assets in his hands, less the expense incurred, as allowed, and the allowance for his compensation. The assignee contended that he was entitled to the assets, without any deduction for the expenses of the receivership. The Circuit Court of Appeals affirmed the order as entered. It declar-

ed that the receiver upon his appointment became the officer and hand of the court in the performance of his duties, neither subject to the wishes or directions of the parties, nor dependent on the result of the controversy for payment of expenses or services, and it held that he was "clearly entitled to protection by the court, in the exercise of such jurisdiction, for all expenses rightly incurred and services rendered under its orders, either in allowances out of the funds committed to his charge, or through provision otherwise made by the court to that end." It also added that:

"Assuming that the court may ultimately charge such expenses, in whole or in part, against the petitioning creditors, on dismissal of the proceedings, and further assuming, for the argument, that they should be so charged in the case at bar, as contended, it is not the place of the receiver to move for relief of one or the other party, nor are his rights dependent upon the equities of the parties therein."

In 1910 we decided In re Charles W. Aschenbach Co., 183 Fed. 305, 105 C. C. A. 517, and adhered to the doctrine we announced in the Lacov Case. In commenting on the Hill Case, Judge Lacombe did not refer adversely to it, but declared that it could not—

"fairly be construed as holding that the bankruptcy court has no discretion to assess the expenses in the first instance against the person ultimately responsible, if it thinks that is the wiser and more efficient course to pursue in some particular case. In the case at bar it certainly seems that it is the better practice, settling the entire matter as in fairness and equity it should be settled, without requiring the injured party to bring an independent action against the petitioning creditor to recover the loss to his estate consequent upon payment of the receiver's expenses. In some other and different case, where there was doubt as to the petitioning creditor's solvency, or the value of his bond, or where it might be difficult to effect service upon him, the other course might be the only one which would secure the receiver against loss."

But this intimation that, if the petitioning creditors should be insolvent, the receiver could come upon the fund, is manifestly a dictum. We are not now called upon to determine whether that dictum is right or wrong, as the present record does not disclose that the petitioning creditors are insolvent.

In Beach v. Macon Grocery Co., 125 Fed. 513, 60 C. C. A. 577, the Circuit Court of Appeals in the Fifth Circuit declared it to be a principle of general application that if a receiver is erroneously appointed, and the adverse party successfully contests the appointment, the compensation due to the receiver and his expenses incurred in the administration of the estate should be taxed to the parties who have applied to have the appointment made. The question arose in that case in a bankruptcy proceeding, and the receiver took possession of certain cattle, horses, and hogs, and incurred expenses for caring for and feeding the stock while in his possession. The District Court directed the receiver to turn over the property. The question was whether the receiver could retain in his possession $325 paid to feed and care for the stock, and the right to retain that amount was denied.

"The property," said the court, "having been taken from the defendants against their consent under an erroneous order, which they resisted successfully in an appellate court, the only proper course is to return the property

without charge of any kind against it or against the successful defendants. The defendants should be put in their former condition as nearly as possible. Instead of any sum being taxed against the defendants under such circumstances, they would be entitled in some jurisdictions to recover damages, in a proper action, for being deprived of the use of the property. The petitioners who instituted the proceedings and secured the appointment of a receiver are properly and equitably chargeable with the costs and expenses incurred by their wrongful application. In the event of their insolvency, any expenses incurred by the receiver should fall on him, and not on the defendants. He need not become receiver unless he chooses, or he may require a bond of indemnity before accepting the position. In a case, therefore, where the receiver has been wrongfully appointed, and the order subsequently vacated, it would be more equitable that the receiver himself should sustain the loss or expenses of the receivership paid by him than that they should be taxed to the successful defendants."

I see no reason why a different principle should be applied to the effect of an erroneous appointment of a receiver in a bankruptcy proceeding than is applied where the appointment is erroneously made in any other proceeding. The earliest case on the subject which has come to my notice is that of Verplanck v. Mercantile Insurance Co. of New York, 2 Paige's Ch. (N. Y.) 438 (1831). In that case a receiver over a corporation had been appointed on an ex parte application, and upon appeal the appointment was vacated as having been wrongfully made. The receiver was directed to turn over all the property which had come to his hands; no provision being made for compensation. This case has been frequently cited since, but the question of the receiver's compensation is not discussed in the chancellor's opinion.

In People ex rel. Port Huron, etc., R. Co. v. Judge of St. Clair Circuit, 31 Mich. 456 (1875), the Supreme Court of Michigan held that the management of a corporation was in its board of directors, and that such management could not be assumed by a court of chancery or vested in a receiver, except in a proceeding to wind up the corporation under the statutes. It held that the appointment of a receiver under such circumstances was beyond the power of the court and absolutely void. Then the question arose in People v. Jones, 33 Mich. 303 (1876), as to the compensation of the receiver whose appointment had been declared void, and the court then held that the lower court was right in directing the receiver—

"to restore such property to the parties from whom it had been taken, and to place them as nearly in statu quo as the nature of things would permit. * * * In so far as the respondent had expended the money of the company, which he had received in conducting the business, in the payment of expenses, and the salaries of employés for which the company would be holden, there being no objection urged to the allowance of these expenditures, it is proper he should be credited for them. But the charge for his own compensation was not a proper one to be allowed, to come out of the fund thus collected."

The opinion was a per curiam opinion, and was without dissent; the court being composed of Chief Justice Cooley and Judges Campbell, Marston, and Graves.

The question came before the First Department of the Supreme Court of New York in Weston v. Watts, 45 Hun, 219 (1887). In that case a receiver had been appointed of the property of a firm; the ap-

plication having been made by certain members of the firm, who asked for an accounting. · Upon appeal to the General Term the order appointing a receiver was reversed, and an order was entered directing the receiver to turn over to the defendant all the copartnership property which he held, and to render an account before a referee named in the order of reversal, who should fix his fees and compensation which those who had originally secured the receiver's appointment were ordered to pay. This order was taken on appeal to the Supreme Court, and there affirmed in an opinion written by Judge Daniels and concurred in by Judge Van Brunt. The court in its opinion, after stating that the appointment of the receiver was without the authority of the law, said:

" * * * There seems to be no legal ground upon which the receiver can be directed to withhold so much of the property from the defendant as may be required to pay his commissions and expenses; but those expenses should be paid, as they have been directed to be, by the plaintiffs, who obtained the appointment. * * * To take a person's property from him by an unauthorized proceeding, and place it in the hands of a receiver, and then subject him to the expenses of the proceeding, would be very transparently unjust, even if the courts had the power to do that. * * * For that there seems not to be, and probably will not be, any authority vested in the courts; for their duty is to right the wrong, when its existence may be made to appear and protect the injured party against its consequences; and that can be no otherwise done than by restoring to him the property of which he may have been divested by the unauthorized interference of the court. As little as that he certainly is entitled to, and the receiver who has acted under the appointment obtained upon the application of the adverse party must look to that party for his fees and compensation. If the court could impose upon the defendant, or the property ordered to be restored to him, the obligation first to pay the receiver, it might with the like reason apply the same principle to every case where one man may be deprived of his property through legal proceedings wrongfully instituted against him by another person. * * * It is sufficiently injurious for a person to have his property taken from him, or his person subjected to arrest, without right; and upon no legal principle can the wrong be aggravated in such a manner as to order him to pay the expenses of the proceeding. * * * The fundamental law of the state will not permit that to be done, for it has been provided by section 6 of article 1 of the Constitution of the state that no person shall be deprived of life, liberty, or property without due process of law. And a legal proceeding by which he may be divested of his property which is unauthorized, and afterwards set aside, cannot be such due process. * * * It may be a hardship upon the receiver himself, but it is one of the risks which he has voluntarily assumed. He could have avoided it by declining to accept the appointment, or protected himself against the loss of his commissions and expenses by first requiring security from the plaintiffs for their payment. If they cannot now be made to pay, it is more just and equitable that the receiver shall be deprived of his fees and expenses, than it would be to require the defendant to defray the expenses of an unauthorized proceeding and the cost of depriving him thereby of the possession of his property."

A concurring opinion was written by Judge Bartlett, who said:

"Indeed, even if the unsuccessful party were unable to pay the receiver, it may well be doubted whether any authority exists to enforce payment of his commissions out of any portion of the property or fund belonging to the party who has succeeded in vacating the receivership. It would be a pretty severe rule, even if constitutional, which should compel a litigant to pay the expense of having his own property illegally taken out of his custody for a while. There might be cases, where a receiver was erroneously appointed, but not under such circumstances as to make the appointment absolutely void, which would warrant an order that his disbursements be paid out of the

fund, as, for example, where the property consisted of a herd of cattle for which the receiver had to buy fodder. In such a case it would be fair and just to charge the successful party with the cost of feeding, for he would have had to incur it, if the animals had remained in his own custody."

In Pittsfield National Bank v. Bayne, 140 N. Y. 321, 35 N. E. 630 (1893), the facts were as follows: An assignment for the benefit of creditors had been adjudged void and the assignee had been directed to turn over all the assigned property to a receiver and had complied with the order. The order was reversed on appeal, and a motion had been made and granted for restitution, but the order allowed the receiver to retain $450 for his commissions, counsel fees, etc. On appeal it was held that, as the receiver never had the legal right to receive the property when the order requiring its delivery was reversed, he ceased to have the right to retain the fund, or any part thereof, for commissions, but should return it undiminished. The opinion, which was unanimous, was written by Judge Peckham. He said that:

"It is the same in regard to this property as if the receiver ought not to have been appointed. In such case, if the receiver has taken possession of property, he must deliver it up and cannot have his own commissions deducted. Weston v. Watts, 45 Hun [N. Y.] 219. * * * We do not decide that in all cases where an order appointing a receiver, or an order directing funds to be placed in his possession, is reversed, no commissions can be allowed the receiver. There may be circumstances existing in any such case which would render it matter of discretion whether or not to permit commissions, etc., to the receiver, and with its exercise we would have no right of review, if not abused. Here, however, we think there was no discretion. * * * The receiver, never having had the right to take the moneys, as has been adjudged, should have been compelled to pay over the whole amount demanded," etc.

In French v. Gifford, 31 Iowa, 428, an order appointing a receiver was upon appeal vacated, as having been improperly made, and the receiver was directed to return the property. The court upon appeal charged the fund in the receiver's hands with one-third of his compensation, and the remaining two-thirds against those upon whose application the appointment was made.

In Beach on Receivers (Alderson's 2d Ed.) § 119, the author approves the doctrine laid down in Weston v. Watts, supra, and says:

"We conceive no reason to question the correctness of this opinion of the New York court, but appreciate that it is both logical and just. There is one feature of the question which the opinion does not cover, the payment of the expenses of the receivership when the plaintiff is insolvent. There cannot, of course, be any recourse on the court, and if the expenses are not paid out of the fund or property held by the receiver they must go unpaid. To guard against such an emergency the court could, and should, in proper cases impose on the plaintiff the giving of a bond as a condition to the appointment of a receiver, so that in the event the plaintiff ultimately fails to maintain the action the payment of the expenses attending the receivership may be properly adjusted."

And in Gluck & Becker's Receivers of Corporations (2d Ed.) § 100, it is said that:

"If his [the receiver's] appointment is not absolutely void, but is held to have been merely improperly made, it would be unjust and inequitable in all such cases to require the receiver's compensation to be paid from the fund in his hands without reference to the legality of his appointment."

I have thus reviewed the authorities, and they show very clearly, I think, that upon principle and authority it is at best very doubtful whether a receiver wrongfully appointed is under any circumstances entitled to have his expenses and compensation paid out of funds which come into his hands as receiver. It seems to me that for a receiver's protection petitioning creditors, who ask for the appointment of a receiver, should be required as a condition of the receiver's appointment to give a bond sufficient in amount to reimburse him for expenses and commissions in case it is found necessary to revoke the appointment as having been made on erroneous grounds.

It is not necessary to consider whether there are any circumstances under which the expenses and commissions of a receiver erroneously appointed can be charged upon the funds which come into his hands. The present case is governed by In re Wentworth Lunch Co., 191 Fed. 821, 112 C. C. A. 335, decided by this court in 1911. In that case a receiver had been erroneously appointed in a bankruptcy proceeding; it not appearing that the appointment was "absolutely necessary" for the preservation of the estate as provided in the statute. The District Court directed the payment of the receiver's fees and the expenses of the receivership out of the proceeds of the property of the corporation which came into the hands of the receiver. On petition to revise that order this court reversed the court below, and held that the expenses should be charged upon the petitioning creditors, who procured it, and not upon the estate. We declared:

"That the creditors who rushed in and insisted upon an unnecessary receivership should pay the expenses rather than that they should be charged upon the corporation, which, as the event proved and as it always insisted, should not have been haled into the bankruptcy court at all."

There is no way of distinguishing that case from the case now under consideration. Neither in that case nor in this does it appear whether the petitioning creditors were solvent or insolvent.

The order of the District Court, in my opinion, should be reversed, with costs.