### In re HURLBURT MOTORS, Inc.

(District Court, S. D. New York. December 6, 1920.)

No. 791.

1. Bankruptcy ⬉⬆484—Expenses of receivership under involuntary proceeding fall on petitioners, where respondents are solvent.

   The expenses of a receivership, under an involuntary proceeding in bankruptcy opposed by respondents, fall on petitioners, regardless of the amount of their bond, where respondents are found solvent.

2. Bankruptcy ⬉⬆484—Estate of respondents in involuntary proceeding, found solvent, liable in first instance for receiver's expense to extent of profits.

   Though respondents in an involuntary proceeding in bankruptcy are found solvent, their estate is liable in the first instance for the receiver's debts and compensation, to the amount and only to the amount of profits during the receivership, with recourse by respondents over against petitioners for any lost profits and the fee of their counsel.

In Bankruptcy. In the matter of the Hurlburt Motors, Incorporated, alleged bankrupt. On application for dismissal of petition and turning over of assets. Order made.

A petition in bankruptcy was filed against the respondents on June 15, 1920, and a receiver appointed. The respondents unsuccessfully moved to vacate

---

⬉⬆For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the receivership, though the receiver was changed. He has conducted the business at a profit of some $2,900 pending the proceedings, which came on to be heard in the District Court before a jury, which on November 29, 1920, found the respondents solvent. They now apply for an order dismissing the petition and directing the receiver to turn over the assets. Questions therefore arise as to who shall pay the receiver, his attorneys, and any of his unpaid debts. Among the latter is an unliquidated claim arising in tort from the injuries to a workman employed by the receiver during the conduct of the business, who has not yet presented any claim.

Harry L. Ettinger, of New York City, for petitioners.
Harold G. Aron, of New York City, for respondents.
Alex H. Jackson, of New York City, for prospective tort claimant.
Harry Zalkin, of New York City, for receiver.

LEARNED HAND, District Judge (after stating the facts as above). [1] It is settled law in this Circuit that under circumstances similar to this the costs of administration fall upon the petitioners, regardless of the amount of the bond. In re Lacov, 142 Fed. 960; In re Wentworth Lunch Co., 191 Fed. 821, 112 C. C. A. 335; In re Aschenbach Co., 183 Fed. 305, 105 C. C. A. 517; In re Independent Machine & Tool Co., 251 Fed. 484, 163 C. C. A. 478. It is true that in Re Weissbord (D. C.) 241 Fed. 516, it was held that the relief was limited to the bond given, and reliance was placed upon In re Spalding, 150 Fed. 120, 80 C. C. A. 74 (C. C. A. 2d). The report in Re Spalding, supra, does not disclose the facts in detail, but apparently the case was one of a claimant to some fund in the receiver's hands; certainly it was not an application by Spalding to recover his property. In any case the later decisions control, and there can be no question that the petitioners are liable in the first instance.

[2] The receiver and the prospective claimant, however, insist that they are to have their claims paid first, and that the respondents must then have recourse over to the petitioners. That is the chief question in issue. This was directly held in Re T. E. Hill Co., 159 Fed. 73, 86 C. C. A. 263 (C. C. A. 7th), a case approved obiter in Re Charles W. Aschenbach, supra. The contrary was, however, ruled in Beach v. Macon Grocery Co., 125 Fed. 513, 60 C. C. A. 557 (C. C. A. 5th), Weston v. Watts, 45 Hun (N. Y.) 219, and People v. Jones, 33 Mich. 303; the last two cases being in equity. In Pittsfield National Bank v. Bayne, 140 N. Y. 321, 330, 35 N. E. 630, the right of the receiver to commissions was agreed in some cases to exist; but the receiver was denied relief because his possession was not legally assumed. It must be conceded that the matter is open to doubt in this court. In re Independent Machine & Tool Co., supra, does not pass on it, because the alleged bankrupt had there consented to the appointment of the receiver, which could not be treated thereafter as a wrong, certainly as between itself and the receiver. Besides, that was a case where the alleged bankrupt attempted to surcharge the receiver's accounts, thus making him personally liable for debts contracted while receiver, for which he was under no circumstances liable. I think that the rule is that the defendant's or respondent's estate is not liable for the receiver's debts or his

compensation beyond the amount of the profits realized or improvements arising through profits. Tex. & Pac. Ry. Co. v. Bloon, 164 U. S. 636, 17 Sup. Ct. 216, 41 L. Ed. 580; Tex. & Pac. Ry. Co. v. Johnson, 151 U. S. 81, 14 Sup. Ct. 250, 38 L. Ed. 81 (only showing what is the Texas law); Bartlett v. Cicero, etc., Co., 177 Ill. 68, 52 N. E. 339, 42 L. R. A. 715, 69 Am. St. Rep. 206; Knickerbocker v. Benes, 195 Ill. 434, 63 N. E. 174. As to anything more, the receiver and his creditors have the responsibility only of the plaintiffs or petitioners.

Therefore, if the receiver had in his hands no more than the original value of the property seized, he would be obliged to turn back everything to the respondents and look wholly to the petitioners for his compensation and so would his creditors. The respondents not only did not consent, but actively opposed the seizure; they could not be required to pay the expenses. It appears, however, that the receiver has now in his hands more than the amount of property received by about three thousand dollars. This is obviously not a profit till his debts and his own allowances are paid, and there is no propriety in paying it over to the respondents. True, their own profits might have been as much or more, and, if so, they have recourse against the petitioners for the loss; but as against the receiver and his creditors they must yield. The proper result, if all could be worked out, would be this: The receiver and his creditors should be entitled to the profits, when ascertained, in payment of their claims, and the petitioners should pay any balance; the respondents should be entitled to collect from the petitioners the allowance of their counsel and any profits they could show they have lost by reason of the mistaken seizure.

Unfortunately, this would take time, and meanwhile the respondents would be kept out of their property, which they need at once, if it is to be saved at all. Some present solution must be found, if only provisional. The best which I can devise is this: The receiver's accounts show an estimated profit of $3,000; they are in evidence and can be referred to. So much of the assets he should be allowed to retain against his debts and his allowances. He will turn over the other assets forthwith to the respondents. Then he will state his accounts to a special master, who will fix his profits, state his unpaid debts, and fix his allowance and that of his attorney. At the same time the respondents will have the allowance fixed of their counsel, and prove what, if any, profit they have lost during the period of the receivership. When these figures are found, an order may pass directing the petitioners to pay to the respondents their counsel fee and the profits lost by them by reason of the seizure, also to the receiver and his creditors any unpaid balance of his allowance, his attorney's, and his debts. If the petitioners do not pay this unpaid balance, the respondents shall be liable to an amount equal to the difference between the profits as found and the sum retained by the receiver.