**Hyman B. FINKELSTEIN, Samuel Finkelstein and Rifkin and Scharf Corp., Appellants,**

**v.**

**KEITH FABRICS, INC., d/b/a Mae Fabrics, Alleged Bankrupt, Appellee.**

**No. 17957.**

United States Court of Appeals
Fifth Circuit.

May 23, 1960.

George F. Meister, John A. Fitzsimmons, Miami, Fla., Smathers, Thompson & Dyer, Miami, Fla., of counsel, for appellants.

Albert I. Gordon, Tampa, Fla., Irwin S. Gars, Miami, Fla., for appellee.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The principal question presented is whether the posting of a bond under § 69 of the Bankruptcy Act is essential to give rise to a liability for costs, attorney fees and damages and vest the Bankruptcy Court with summary jurisdiction to hear and determine the demand against petitioning creditors for the wrongful appointment of a receiver. Brought here as an appeal from an order of the District Court denying a petition to allow the late filing of a petition of review, the case may also involve the subsidiary issue of an abuse of the Court's discretion.

For our purposes, the facts may be severely compressed. The Petitioning Creditors (now appellants) on December 16, 1958, filed an involuntary bankruptcy petition against the Bankrupt corporation (appellee). The Petitioning Creditors also filed simultaneously a separate application for appointment of a receiver. A receiver was appointed, and he took immediate possession of the Bankrupt's retail stock of merchandise. The order did not, as called for in § 69, 11 U.S.C.A. § 109, require a bond by Petitioning Creditors. Within two days, Bankrupt on December 18 moved to vacate the order because of the failure to post a bond. After adjourned hearings on the Bankrupt's motion, the Referee, by order of December 24, required the posting of a $10,000 bond by December 29. No bond was ever filed. The Bankrupt also filed an answer to the bankruptcy petition denying insolvency and the occurrence of acts of bankruptcy. On December 30, 1958, the Referee, by order, found that the Bankrupt was solvent and that the acts complained of did not constitute acts of bankruptcy. That order expressly vacated the prior appointment of the Receiver, directed the return of the property to the Bankrupt, dismissed the petition in bankruptcy and provided that "jurisdiction is hereby retained to grant such other relief as shall be appropriate."

On February 5, 1959, the Bankrupt filed a petition with the Referee seeking counsel fees, expenses and damages resulting from the seizure of the property by the Receiver. Hearings were held on

February 6 and April 7, 1959, at which Petitioning Creditors were represented by counsel, evidence was adduced, and arguments were made. No objection to the jurisdiction of the Bankruptcy Court was made at any time, either at the outset or prior to or at the time of the Referee's final order of April 27, 1959. That order, which until set aside has the force of a court's decree,[1] found the receivership to have been wrongful and awarded Bankrupt $19,000 in damages plus $10,000 in counsel fees. The then counsel for Petitioning Creditors had actual notice of this order not later than May 8, 1959, and Petitioning Creditors had personal notice not later than May 22. They were unable to contact their counsel until June 15. On June 22 new (and present) counsel for Petitioning Creditors filed the petition for leave to file the Petition of Review. After hearing and argument this was denied June 26, 1959.

■ We agree with Petitioning Creditors that the District Court had the power to receive and grant the petition for leave to make a late filing of the Petition for Review. The time fixed as a matter of right is "within 10 days after the entry" of an order of the Referee. § 39, sub. c, 11 U.S.C.A. § 67, sub. c. But the section permits this to be enlarged to a date "within such extended time as the court may for cause shown allow." This is not a restriction on jurisdiction. "We do not think Section 39, sub. c, was intended to be a limitation on the sound discretion of the bankruptcy court to permit the filing of petitions for review after the expiration of the period. The power in the bankruptcy court to review orders of the referee is unqualifiedly given in Section 2(10). The language quoted from Section 39, sub. c, is rather a limitation on the 'person aggrieved' to file such a petition as a matter of right." Pfister v. Northern Illinois Finance Corp., 1942, 317 U.S. 144, at page 153, 63 S.Ct. 133, 139, 87 L.Ed. 146, 153; Oppenheimer v. Oldham, 5 Cir., 1949, 178 F.2d 386, 390.

This appeal, then, is a proper means for determining Petitioning Creditors' basic contention. For if, as they contend, the Bankruptcy Court as a matter of law lacked jurisdicion to enter the damage award because no bond had been filed, it would have been a patent abuse of discretion at that early date not to permit a filing of a Petition of Review to bring that before the court for decisive action. In other words, the Petitioning Creditors, on such hypothesis, ought not to have been remitted to equity suits, state or federal, to enjoin the enforcement of the final decree of April 27 on which, we are told, execution had been issued by the Clerk.

This contention precipitates a triple inquiry. First, does § 69, sub. a[2] requiring a bond for the appointment of a receiver, and § 69, sub. b[3] providing for the allowance of costs, counsel fees and damages occasioned by such seizure to be determined summarily as in § 50, sub. n,[4] fix a liability against petitioning creditors where no bond is filed? Sec-

---

1. § 39, sub. c, 11 U.S.C.A. § 67, sub. c; 2 Collier, Bankruptcy § 39.16 (14 Ed).

2. "(a) Whenever a petition is filed to have a person adjudged a bankrupt and an application is made to have a receiver or a marshal take charge of the property of the bankrupt, or any part thereof, prior to the adjudication, the applicant shall file in the same court a bond in such amount as the court shall fix, with such surety as the court shall approve, conditioned to indemnify the bankrupt for such costs, counsel fees, expenses, and damages as may be occasioned by such seizure, taking, and detention of such property * * *." 11 U.S.C.A. § 109, sub. a.

3. "(b) If the petition for adjudication be dismissed, or withdrawn by the petitioners, the court shall fix and allow to the bankrupt, to be paid by the obligors on such bond, the costs, counsel fees, expenses and damages occasioned by such seizure, taking or detention of his property, in the manner provided by section 50, subdivision n, of this Act." 11 U.S. C.A. § 109, sub. b.

4. "In the event of the breach of any obligation of a bond furnished pursuant to this Act, the Court may, upon applica-

ond, is the proceeding against petitioning creditors who are thus not parties to a bond one for summary or plenary action? Third, if a plenary suit is otherwise required, was there consent to summary action by failure to object as now spelled out under the 1952 amendments to § 2, sub. a(7).[5]

■ As to the first, Petitioning Creditors argue that determination of damages and counsel fees to a bankrupt is not a matter ordinarily of concern to the Bankruptcy Court. Consequently, the argument proceeds, Congress could not have meant to establish a liability apart from the bond. But if, as is so plain, the filing of a bond does establish a liability and prescribes a summary means of determination, it is equally clear that Congress did recognize that it was appropriate that the Bankruptcy Court have the means of protecting *alleged* bankrupts from serious losses through improvident seizures of property. In the Congressional approach three things seem evident. First, alleged bankrupts need protection against ex parte action of creditors. Second, the alleged bankrupt ought not to have to be content with the financial ability of a petitioning creditor to respond for damages. And third, a ready procedural means should be afforded to make the security effective. The first eliminates questions of substantive law, varying from state to state, on malicious prosecution. For under

§ 69, sub. b, note 3, supra, the event which brings into play the liabilities imposed is "if the petition for adjudication be dismissed, or withdrawn by the petitioners." On such an event, § 69, sub. b peremptorily requires that the court "shall fix and allow * * * counsel fees, expenses and damages occasioned by such seizures." [6] No issue of probable cause or abuse of process is involved. "It is the purpose of [§ 69] to spare [the bankrupt] the expense and trouble of seeking either of [the] * * * remedies" of malicious prosecution or restitution of property. In re Haff, 2 Cir., 1905, 135 F. 742, 743. 4 Collier, Bankruptcy § 69.02 at 866 and § 69.04 at 875, footnote 23.

■ As to the second and third of these Congressional considerations, it is quite understandable why specific provision was made concerning proceedings against a surety. A surety is neither a creditor nor a bankrupt. It is not a party, as such, to bankruptcy proceedings. The obvious purpose, then was to subject such a surety to the jurisdiction of the court in which the bond was posted. This is spelled out both in § 69, sub. b and by incorporation of § 50, sub. n, see notes 3 and 4, supra. The fact that the amount fixed by the Bankruptcy Court is "to be paid by the obligors on such bond," § 69, sub. b, or that "collection" be enforced through appropriate process "from those liable on the bond,"

---

tion of any party in interest and after notice, summarily determine the damages and by appropriate process enforce the collection thereof from those liable on the bond." 11 U.S.C.A. § 78, sub. n.

5. "The courts of bankruptcy * * * are invested * * * with * * * jurisdiction in:

" * * * * * *

"(7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided * * * and where in a controversy arising in a proceeding under this Act an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expira-

tion of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction." 11 U.S.C.A. § 11, sub. a (7).

6. This is the undertaking in the bond, official form No. 8, that "the said [Petitioning Creditor] shall indemnify the said [Bankrupt] for such costs, counsel fees, expenses, and damages as may be occasioned by such seizure * * * in the event the said petition is dismissed or withdrawn by the petitioners." This bond is the official form No. 8 as set out in 4 Collier, Bankruptcy § 69.02 at page 867, footnote 9.

§ 50, sub. n, does not make it any less the liability of the petitioning creditors. The bond is the security to assure payment. By its own terms, see note 6, supra, the obligation of the bond to pay is on the part of the principal, i. e., the petitioning creditor. The surety's obligation comes into existence only in the event of default. And, in any case, on ordinary principles of suretyship, there is an automatic duty of exoneration and reimbursement on the part of the principal to the surety. Restatement, Security §§ 111, 112; 50 Am.Jur., Suretyship, §§ 219–225. The ultimate payment, therefore, will be by the petitioning creditors with the surety being a mere conduit. The reference to "obligors on such bond" or those "liable on such bond" was also to make clear that only those specific creditors petitioning for the appointment of a receiver, and not other creditors, are to be liable for these consequential damages. 4 Collier § 69.04 at 871, note 9 and 873–874. Van Duser v. American Surety Co. of New York, 153 Misc. 715, 274 N.Y.S. 939; In re General Research Laboratories, Inc., D.C.N.Y., 7 F.2d 512.

■ It is now recognized that where a bond has been posted, the Court may award damages against the principals (petitioning creditors) in excess of the bond. 4 Collier § 69.04 at 874.[7] This demonstrates that the bond does not create the liability. And since the bond is inadequate to the extent of such excess, it reflects as well that the bond is not indispensable to the operation of the procedural mechanism for determining damages.

We need spend little time on the question whether a proceeding against petitioning creditors in the absence of a bond is for summary or plenary disposition. Of course, the plainest of language in § 50, sub. n., note 4, supra, incorporated by reference in § 69, sub. b, note 3, supra, does prescribe a summary disposition where a bond has been filed. These provisions, brought into the Bankruptcy Act in 1938, were intended to and do "represent a substantial departure from the law as established prior to the 1938 amendment." 2 Collier § 23.04 at 461. And "there is no question that §§ 69b and 50n bestow summary jurisdiction on the courts of bankruptcy to determine liability on the bond." 4 Collier § 69.04 at 870. But it is, perhaps, unwise to indicate specifically whether initially it is summary or plenary as that is a matter which should be reserved for a time when the issue is inescapably presented. Here we may assume that in the absence of a bond, determination of the amount to be awarded under the liability to indemnify created by § 69, sub. a requires a plenary action against a petitioning creditor.

■ Starting with that assumption, it nonetheless appears quite clearly that since the liability for indemnity created by § 69 relates to petitioning creditors in relation to the bankrupt for having invoked the extraordinary possessory processes of the Bankruptcy Court, it is a matter which pertains generally to administration of the Act. It is at least sufficiently so to be a "proceeding under the Act" as prescribed in § 2, sub. a(7), note 5, supra. Designed as it was, to overcome the ruling in Cline v. Kaplan, 1944, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97, which permitted an adverse claimant to register objection to summary proceedings up to the moment of the final decree, this 1952 amendment has, of

---

7. 4 Collier in footnote 20 at 874 cites: "Matter of Hur[l]burt Motors, Inc., D.C. N.Y., 275 Fed. 62, noted (1921), 21 Columbia L.Rev. 466. The fact that there is lack of coverage by a bond does not indicate lack of damage. Harvey v. Gartner, [136] La. [411], 67 So. 197."
Although the point does not seem to have been expressly raised either on the first appeal, United States Fidelity & Guaranty Co. v. George Process, Inc., 5 Cir., 1949, 175 F.2d 844, or the second appeal, United States Fidelity & Guaranty Co. v. Lafayette Engineering & Tool Co., 5 Cir., 1951, 188 F.2d 778, 779, this Court affirmed a judgment against the surety for the amount of the bond and a further judgment for damages in excess of the bond against the petitioning creditors.

course, primary application to controversies over property.[8]

But there is no reason why the words "a controversy arising in a proceeding under the Act" should be restricted to the most common situation in which the contest over summary or plenary disposition is asserted. On the contrary, the words should be given their normal meaning. So treated they fit the controversy here presented. There are adverse parties—the alleged Bankrupt and the Petitioning Creditors (and their surety if a bond is given). And it is a controversy which springs from the Bankruptcy Act itself unrelated to local substantive law as, for example, malicious prosecution.

That being so, the amendment prescribes that consent to the summary proceedings shall be deemed to have been given by the adverse party unless objection is interposed by answer or motion. No such objection was ever made in the proceedings before the Referee. The first time it was urged was in the belated petition for leave to file a Petition for Review.

■ Since we have now held that the bond is not indispensable to liability and that, from a failure of timely objection, consent was given to the summary proceedings, it follows that the District Court's refusal to grant leave was not an abuse of discretion with respect to these grounds. Nevertheless we conclude that the Court's denial of the petition to file the Petition of Review should be vacated and the matter remanded. The District

Court in an order simply declared that "The petition be and is hereby denied." From this we cannot be certain whether this was because the Court thought it had no right whatever to permit a late petition, or because the showing made did not, either as a matter of law or fact, permit or require the exercise of discretion favorable to the grant of the permission, or because the only points strenuously urged were the fundamental ones discussed by us going to the jurisdiction of the Referee. We are not holding that on remand the District Court must grant the petition for late filing of the Petition to Review. We merely hold that, with all of these fundamental points now determined by this opinion out of the way, the District Court should now be free to determine whether in the exercise of a considered judicial discretion a sufficient showing[9] is made to lead the Court to believe that from the nature of these proceedings a review by a Court is warranted. Nor do we imply that if the Court, on reconsideration below, entertains a late Petition for Review for consideration on the merits, this would necessarily forecast a reversal or modification of the Referee's order. The District Court may well conclude that while it is appropriate under these circumstances to review the proceedings as would have been done as a matter of right if filed within the statutory ten days, the action of the Referee should, or must, be sustained. We do not, and cannot, know what the showing will reflect. And we do not, by anything said or unsaid, expressed or implied, indicate

8. 1 Collier § 2.01 (1959 Supp.) which sets forth House Report No. 2320 on S. 2234, 82d Congr., 2d Sess. (1952). The House Report points out that § 2, sub. a (7) rather than § 23, sub. a was amended in order to make the change applicable to the entire Act.

9. The District Court on remand may deem that the interests of justice may suggest that it is appropriate to permit the Petitioning Creditors to amplify the petition and showing for leave for late filing to make clearer the basis, if any, for attack on the intrinsic merits of the Referee's order. In the petition points (a) through

(f) were all concerned with the jurisdictional question which we now authoritatively overrule. Only the broadest attack was made in paragraphs (g) and (h) that the award was "wholly unfounded * * * arbitrary, unreasonable and excessive." Apparently the District Court did not have before it the full record made before the Referee, nor does there appear to have been a specific consideration of whether, conceding jurisdiction for summary proceeding, the evidence reasonably justified damages, the amount thereof or the substantial attorney fees awarded.

or even intimate one way or the other what the final action of the District Court should, or must, be or not be.

Affirmed in part and vacated and remanded in part.