## THE OAKMAR.

### No. 2222.

District Court, D. Maryland.

Sept. 17, 1937.

George W. P. Whip, Venable, Baetjer & Howard, and Joseph France, all of Balti-more, Md., and Cravath, deGersdorff, Swaine & Wood, of New York City, for libelant.

I. Duke Avnet and Wilfred T. McQuaid, both of Baltimore, Md., for respondents.

WILLIAM C. COLEMAN, District Judge.

This court, sitting in admiralty, has, undoubtedly, jurisdiction in the present case. The owner of a vessel in navigable waters within the Maryland District is here seeking to have restored to it complete possession of that vessel, which it asserts has been unlawfully withheld or interfered with by the various individuals who had formerly been employed on the vessel, although no longer so employed, but who nevertheless claim the right to remain on the vessel, for the purpose of coercing the vessel's owner into establishing a higher scale of wages for members of the union to which they belong, and for the purpose of getting other alleged advantages. In other words, they are engaged in a so-called sympathetic sit-down strike.

The procedure invoked by the vessel's owner, filing a possessory libel of the vessel, pursuant to which a show cause order has been granted, resulting in this hearing, is entirely proper and well known in admiralty law, although heretofore rarely invoked for the present purpose, because apparently unnecessary.

This court cannot subscribe to the doctrine that the jurisdiction of admiralty to prevent a trespass is superseded by any of the labor statutes to which the court's attention has been called. Everything disclosed at this hearing proves conclusively that these so-called strikers do not have the slightest legal right to do what they are doing. They are, by their own statements, by their own admissions, trespassers of a most willful sort,—members of a union whose directions have apparently been blindly followed. The vessel's owner owes them nothing that has not been fully paid or tendered. Their contracts of employment have otherwise been fully performed on the part of the vessel's owner, and are at an end. What, then, is it that these men want to accomplish? To compel the vessel's owner to pay them and other members of the union higher future wages, and to do other things on their behalf which they claim they are entitled to, and

which will redound to their benefit during any future employment.

■■■ How do they seek to do this? By taking possession of the vessel and saying to her owner, "We won't let you use her unless and until you meet our demands." In short, instead of resorting to legal methods in an effort to obtain what they claim they are entitled to, they seek to take away the property rights of the vessel's owner, and by so doing to coerce, yes, in effect, to club such owner into submission. Such conduct has no recognition under our law, and can never have, if our form of government is to survive. Such conduct belongs to the category of sabotage and blackmail. Labor and capital, employer and employee, stand upon the same basis before this court, with respect to constitutional rights. Organized and unorganized labor have no greater right the one than the other. The fundamental personal and property rights of each are entitled to exactly the same protection under our Constitution, and will receive exactly the same protection from this court, whenever the aid of this court is properly invoked.

Consider how utterly specious is the claim of the so-called strikers. Suppose the situation were reversed, and the vessel owner said to these men, who, we will assume, had left the vessel, "You must again come aboard the ship and work at our, not your specified wage," and these men refused, and that then representatives of the owner of the vessel took possession of the homes of these men, took up their abode there, and refused to leave, or to let these men have the enjoyment of their homes until they yielded? The interference with personal and property rights would be as clearly unconstitutional in the one case as in the other. But these men say in the present case, in effect, that "our status of having been employees upon the property of another puts us in a preferred class, entitles us to an interest in such property, which we can appropriate, or at least hold as security, as it were, for the more complete guarantee, or the fruition, of those rights which are fundamentally ours under the law." But the mere statement of such a theory is its own and best refutation. It is but another and less shocking way of saying, "If the law does not give us what we want, we will make the law over." Such theories are the handmaid of crime and anarchy.

They emanate from those persons who lack that self-control which enables men to abide the slower processes of orderly government instead of yielding to that impatience which, if not restrained, will ultimately destroy the fundamental rules for human freedom upon which our form of government is based. The law is, of course, progressive. It must be, because the law represents rules of human conduct—of life, and life is progress. The child progresses, grows into manhood or womanhood, but not into an animal, with attributes of the beast, displacing human ones. Similarly, our law must always keep inviolate certain basic rights inherent in any free people, and one of these rights is the right to use one's property without molestation from mere trespassers. Such right will be protected by this court as long as it sits, without fear or favor.

Finally, a word to the attorneys for the respondents in this case, and to other members of this bar who may seek to appear in like cases in the future. You are all sworn officers of this court, but this does not mean that your status is akin to that of innkeepers—that you must throw your protecting arm about whomsoever may apply to you, regardless of the merits or type of the application. Quite the contrary. The oath required of every attorney before admission to this bar contains, among other things, the following promise: "I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land." I suggest to counsel in this case, and to others who may see fit to undertake to appear in like causes, to take those words home with them, to ponder them carefully, to consider whether lending their aid in the prosecution of suits of the specious character of the present one is or can, in fact, be consistent with such oath, with your plain duty as officers of this court and as citizens of our country, honestly concerned with its welfare at a time such as the present, when it cannot be asserted too often, or too forcibly, that this is a country governed by law, and that the courts will enforce the law promptly, and without fear or favor.

The court orders, in accordance with the opinoin just rendered, that these respondents leave the vessel, the Oakmar, at once.

The marshal is hereby directed to take possession of the vessel immediately, to use all appropriate means to remove the respondents immediately from the vessel, should any of them refuse forthwith to leave, and to hold the vessel subject to the further order of the court. The marshal shall report to the court, within two hours of this time, that he has fully carried out this order as aforesaid.