## THE LOSMAR.

### No. 2225.

District Court, D. Maryland.
Sept. 29, 1937.

888

Venable, Baetjer & Howard, Joseph France, and George W. P. Whip, all of Baltimore, Md., for libelant.

I. Duke Avnet and Wilfred T. McQuaid, both of Baltimore, Md., for respondents.

WILLIAM C. COLEMAN, District Judge.

It seems to the court, under the present circumstances, that its position should be made entirely clear with relation to the facts in the present case, since it has been contended that they are so different from the facts in the Oakmar Case, 20 F.Supp. 650 as to raise some different questions of law. As has been pointed out, the hearing today arose originally upon a show-cause order,—an order requiring these men to show why they should not leave the Losmar. Now, it is explained to the court that through misunderstanding of the court's order they have actually left, and being no longer on the boat, and counsel having stated in open court today that they will not advise them to return, the question presented by the show-cause order, in effect, becomes moot. That is true. But lest there be any future misunderstanding with respect to the position of this court in a case of this kind, and its. bearing upon the former decision of this court in the Oakmar Case, 20 F.Supp. 650, it seems desirable for the court to express an opinion, looking back to the situation that did exist until this morning, and from which the vessel owner asked for relief.

As to the other question with respect to which counsel for these men are seeking advice, and an opportunity to file a separate libel, namely, the right, as they claim, to have this court pass upon the validity of the discharge of these men, coupled with the question as to whether or not this court can or should, if the discharge is found to have been improper, reinstate these men, the court now announces that it, of course, has no disposition to deny to these men an opportunity to be heard on that question, if they see fit. However, and without, of course, now attempting to decide that question, because all the facts involved may not be before the court, it is only proper for the court to say that it believes that the statute referred to, section 594 of title 46 of the U. S. Code Annotated, affords the only available remedy in a court of admiralty. That is to say, it provides a measure of damages which this court believes to be in lieu of any other damages that might otherwise be obtained, in the event that an improper discharge is proved. The court be-

lieves such has, in effect, been decided by the Supreme Court (see The Steel Trader, 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326), and, therefore, this court is bound by that ruling.

In short, this court finds nowhere in that section or any other section governing this court sitting as an admiralty court, any warrant for saying that these men, or any other men under like circumstances, may obtain specific performance of their contract of employment, and may require that their employer, the master or the owner of the vessel, reinstate them. It is fundamental in the law that ordinarily private contracts of employment, if breached, for whatever cause, do not carry with them the right to compel the employer to take the employee back, if the discharge is found to have been wrongful. This court is not attempting to pass upon what may be the extension of that doctrine, by virtue of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., because, as the court understands, what has just been asked for by counsel for these men in the present case is a hearing at a future time by this court sitting as an admiralty court. Therefore, this court is not now attempting to say what, if any, additional rights these men might have by claiming that this situation presents a labor dispute referable by them to the Labor Relations Board, or to some other channel. That is a question that is not now before this court. And, as already explained, this court, at any future hearing, will so construe the admiralty statute as to exclude a consideration of those questions.

What has just been said is by way of further explanation of the jurisdiction of this court sitting in admiralty. It is not a final announcement with respect to the propriety or impropriety of the discharge of these men as such, but is simply a restatement for the benefit of counsel, in order that they may know what the court believes to be the limitations of the law, in the event that that matter is heard.

We return now to the original question which, as explained, although having become moot, does seem to require that it be dealt with, lest there be any misunderstanding in the future. The court will endeavor to deal with that major question on the facts as they were presented up to the moment when the men actually left the vessel. On September 17th, this court, sitting in admiralty, had before it the case of the steamship Oakmar, in which certain persons who had formerly been members of the crew of that vessel and who, contrary to the orders of her master, refused to leave her, endeavored by thus engaging in what is generally known as a sympathetic sit-down strike to extort from the master and owner of the vessel certain additional advantages with respect to terms of future employment.

In the Oakmar Case it was admitted by counsel for these men that they were trespassers upon the vessel; but it was argued that nevertheless they could not be required to leave the vessel, because they were engaged in a labor dispute which was, under the circumstances, only justiciable in the first instance by the Labor Board, created by the National Labor Relations Act, enacted July 5, 1935, and that this act of Congress superseded any power which the courts of admiralty might previously have had with respect to possessory libels. But this court dismissed these contentions, because totally without merit, and subversive of every principle of the law of trespass and of the correlative fundamental principles of admiralty, that the courts of admiralty have the right to secure to the lawful owners of a vessel on navigable waters of the United States complete and uninterrupted possession and use of such vessel in lawful commerce. Accordingly, this court directed the marshal forthwith to seize the vessel and to remove forthwith any persons who might be found upon her contrary to the ruling of the court, and to hold the vessel subject to the further order of this court, in the interest of her owner, all of which was immediately accomplished.

In spite of the recent action of this court, as just explained, thirteen members of the crew of the steamship Losmar, owned by the same company, the Calmar Steamship Corporation, as was the steamship Oakmar, asserted their right to remain on the Losmar ever since September 15th last, although on that day they refused to perform any of the duties which they had contracted to perform on the vessel pursuant to their shipping articles, and although, because of such refusal, the master of the Losmar, on September 17th, discharged them, tendering them their earned wages, and ordered them to leave the vessel. The same tender of wages and order to leave the vessel was repeated on September 24th, but again ignored.

The reason which was given for the lapse of some seven days between the first and last order from the master to the men to leave the vessel is that on or about the 16th of September, the master had preferred, before the local maritime board of inspectors at Baltimore, charges of insubordination against these men, and desired to have their certificates of service taken away. At the suggestion of that board the men were allowed, without prejudice to the rights of the master or owner of the vessel, to remain aboard her until the hearing before that board was terminated, which I understand occurred on or about September 23d, when the board took under advisement the matter that had been referred to it, and I assume announced that it would render a decision in due course, disclaiming, as has been announced in court today, any power to adjudicate the question of the legality of the so-called sit-down strike, in which these thirteen members of the vessel's crew had been engaged since September 15th, and had given as their basic reason the employment by the master of certain other members of the crew of the Losmar who are not members of the National Maritime Union, of which the respondents are members.

■ Numerous other reasons were also advanced, most of which need not be discussed here, because believed to be foreign to the question now before this court. The claim that these men are entitled to one month's wages in addition to the wages actually earned, which the master tendered them upon their discharge, is based upon section 4527 of the Revised Statutes (46 U.S.C.A. § 594) already referred to, and which is as follows: "Any seaman who has signed an agreement and is afterwards discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

It is clear from the language of this statute that the master or owner of a vessel owes no seamen upon their discharge any wages in addition to those actually earned, unless and until they have proved in a court hearing that they were improperly discharged. The owner of the Losmar claims that the right to complete and immediate possession of her is a substantive right entirely independent of the question of what, if any, additional wages the present respondents may ultimately be found to be entitled to under this statute, if their claim for same is properly prosecuted here or in some other appropriate court, and entirely apart from any just grounds which may have been or may hereafter be advanced by them for their refusal to obey the master's order to leave the vessel. In short, the owner claims that the present case is no different in principle from that involving the steamship Oakmar, recently heard by this court, and that the admitted differences in facts do not call for the application of any different legal principles. In this we believe the owner of the Losmar is unquestionably correct. What this court decided in the Oakmar Case must necessarily be equally applicable to the facts in the present case, in spite of some existing differences.

■ What are the material factual differences? That here the men's contracts of employment, namely, their shipping articles, were still subsisting when they were discharged, whereas in the Oakmar Case the crew's term of employment was completed, and, second, that unlike the situation in the Oakmar Case, these men later on offered to resume work, and that offer was refused on the part of the Losmar's master.

But these differences can have no material bearing upon the single, clear-cut question of law raised by the present possessory libel, which is precisely the same, and the only question raised by the possessory libel brought in the Oakmar Case, namely, may the owner's possession and use of his vessel lawfully be taken away or interfered with by mere trespassers, because of some claim which they may have against the master or the owner of the vessel for wages, or for anything else?

As this court said in its opinion in the Oakmar Case, the mere statement of such a theory so obviously untenable is its best refutation. Shorn of its deceptive coloration, it is simply this, that any means will be justified to obtain a given end, even the destruction of personal and property rights; that the mere assertion of some human need is sufficient to overthrow and to render obsolete any legal principle that may stand as a barrier to the more prompt

fulfillment of that need. That, as this court said in the Oakmar Case, "is but another and less shocking way of saying, 'If the law does not give us what we want, we will make the law over.' Such theories are the hand-maid of crime and anarchy; they emanate from those persons who lack that self-control which enables men to abide the slower processes of orderly government instead of yielding to that impatience which, if not restrained, will ultimately destroy the fundamental rules for human freedom, upon which our form of government is based. The law is, of course, progressive. It must be, because the law represents rules of human conduct—of life. And life is progress. The child progresses, grows into manhood or womanhood, but not into an animal, with attributes of the beast displacing human ones. Similarly, our law must always keep inviolate certain basic rights inherent in any free people. And one of those rights is the right to use one's property without molestation from mere trespassers. Such rights will be protected by this Court as long as it sits, without fear or favor."

With just as much, or as little, plausibility could it be argued that a litigant before this court, having pleaded his cause, which we will assume was based upon an alleged debt due him by another, and having been told by this court that it would take the matter under advisement and render a decision in due course, would be justified in saying, "No, I must have my money at once or I personally shall dispossess my debtor of his home and hold it until he pays me." No, the law of this admiralty court, which protects the owners of a vessel in the lawful use of it, is not dead. The law of trespass is not dead on the law side of this court. The two principles are fundamentally the same, and will be enforced without fear or favor as long as this court sits, or until these principles are changed by those higher tribunals whose decisions control this court.

It may be assumed, but, of course without actually deciding for the purpose of the present case, that these so-called sit-down strikers may prove that their discharge was arbitrary and unwarranted and that, therefore, they should be paid the extra statutory wage penalty that they are claiming. It likewise may be assumed, but again without actually deciding, that this statutory penalty has been supplemented, or even entirely displaced by the more recently en-

acted remedies afforded to those engaged in labor disputes, and that the federal Labor Relations Board has jurisdiction to hear the alleged grievances of these men, and afford them every additional compensation or advantage, monetary or otherwise, which they are seeking, including an order requiring the master and owner of the Losmar to reinstate them in employment, and still these men would not have shown the slightest justification for refusing to leave the vessel when ordered so to do by her master. Nowhere in the labor acts does the court find any provision, express or implied, which gives any support to the contentions of these men. The power to discharge his crew as and when he sees fit is of necessity inherent in the master of a vessel. Such must be the prerogative of the master, for it is the corollary of his responsibility for the adequate protection of life and property aboard his vessel. It is just as idle to say, therefore, that the master should not be able to hire and to discharge members of his crew as and when he chooses, as to say that, when in the face of imminent peril of collision or other dangers of the sea, he could not use his own judgment with respect to the actual navigation of his vessel. "To discharge" means "to dismiss," "to get rid of." Such dismissal or riddance may ultimately be proved to have been unwarranted, but pending such proof in the manner that the law provides, and pending lawful reinstatement, any member of the crew becomes a trespasser if he does not obey unqualifiedly the master's command to leave.

No order is necessary to be issued in this case, in view of the changed status, as admitted, of the men against whom the show-cause order was directed. But let the court finally say that although the changed facts did not actually require the rendition of an opinion in this case such as has been rendered, nevertheless, the court has deemed it appropriate, if not necessary, to cover all of the various points that are or may be involved, in order that there may be no misunderstanding in the future as to the intended scope of the court's action and order in the previous case.

If these men, respondents in this case, or in any other like case, see fit to bring an appropriate action, in order that the question of the legality of their discharge can be heard by this court, and an interpretation placed by this court upon the other questions that have been referred to in the

opinion just rendered, that is their right, and the court will entertain such in due course.

Permission is given to file a cross-libel, for the purpose of raising the question of the discharge. But let me again make it clear, that any men who do go back on these vessels, in violation of the opinion just rendered, and of the terms of the announcements in both of these cases, will be treated as though they were in contempt of the ruling of the court, and will be cited to show cause why they should not be punished for such contempt. Of course, I am not attempting to pass upon the rights of parties who are not before me in either of these cases, but I am referring, when I say "any person," to any person who has been affected by these cases. If other men have a different state of facts, they are entitled to be heard on them. But let me say this in conclusion, if counsel for any one has any doubt as to the meaning or the extent of the ruling respecting the situation on both of these vessels, now is the time for them to ask the court for further clarification. The court has endeavored to make its decision entirely clear, and it is their duty now to ask the court for further clarification, if they are still in doubt, and to obey the orders of the court, unless and until an appeal is taken, and the orders of this court are changed. This court sees no necessity for any further ruling being asked of it with respect to either of the cases. The only order that would be appropriate at this time would be an order in effect dismissing these proceedings, were it not for the fact that permission has just been granted to counsel for these men to file a cross-libel with respect to the question of discharge, to be heard at a later date.