In the Matter of UNITED TRACTORS, INC., Bankrupt.

Hugh A. MINER, Trustee in Bankruptcy, Plaintiff,

v.

SHARP FORD–MERCURY, INC., Defendant.

Bankruptcy No. 77–60285–B–SJ.

United States Bankruptcy Court,
W. D. Missouri,
St. Joseph Division.

Aug. 6, 1981.

As Corrected Aug. 24, 1981.

**240**

Hugh A. Miner, St. Joseph, Mo., for plaintiff.

Philip Eveloff, St. Joseph, Mo., for defendant.

## FINAL JUDGMENT OF DISMISSAL OF PLAINTIFF'S COMPLAINT

DENNIS J. STEWART, Bankruptcy Judge.

### I

The plaintiff trustee in bankruptcy filed his complaint in this adversary action to require the defendant to turn over to him the purchase price of a certain farm implement, to wit: a Sun Machine for analyzing motors. In the defendant's answer to the complaint, the defendant, *inter alia*, in requesting denial of the plaintiff's complaint, prayed to be "discharged."

The matter was expedited to a speedy trial by the court. Thereafter, before written findings of fact and conclusions of law could be filed, the United States Court of Appeals for the Eighth Circuit handed down its decision in *In re Citizens Loan and Savings Co.*, 634 F.2d 1144 (8th Cir. Dec. 3, 1980). In that case, it appeared to this court, the court of appeals held that, in order for the bankruptcy court to exercise summary jurisdiction, the existence of the

prerequisites for summary jurisdiction must be clearly and unmistakably present.[1]

### II

Therefore, on January 13, 1981, this court entered its order finding itself to be without summary jurisdiction and transferring this action to the civil docket of the district court pursuant to Rule 915(b) of the Rules of Bankruptcy Procedure because it appeared that there was independent federal jurisdiction of the plaintiff's complaint. In the order transferring the action to the civil docket of the district court, this court made the following pertinent findings and observations:

"After the hearing held herein, the United States Court of Appeals for the Eighth Circuit handed down its decision in *In re Citizens Loan and Savings Company; Aylward v. Snooks*, 634 F.2d 1144 (8th Circuit No. 80–1218 December 3, 1980), evidencing a hostility for the exercise of almost any form of summary jurisdiction. For, in that decision the court of appeals held that the court of bankruptcy might not issue a turnover order even in respect to monies which were taken from a bankrupt corporation admittedly under no claim of right when there were other monies in respect to which a claim of right could be made by the same defendant.

"When, in the wake of that holding, there is, as noted above, at least a colorable objection to the exercise of summary jurisdiction in the answer herein, it appears that this court dare not proceed further in this case. This is so even though the defendant appears to have later submitted this case to the bankruptcy court on the merits, for this only creates an ambiguity which is an unsatisfactory basis for jurisdiction in light of *Aylward v. Snooks, supra.*

---

1. Thus, in that case, even though it appeared that the summary jurisdiction of the bankruptcy court could be sustained with respect to at least a portion of the sums paid to the defendant, with respect to which he could not con-

ceivably have mounted a claim of right. But, because he could claim some of the monies paid him, the court of appeals held that he must be regarded as having a substantial claim of right to *all* the monies paid him.

"It appears that there is federal district court jurisdiction under § 67 of the Bankruptcy Act. Therefore, this case should be transferred to the civil docket of the district court pursuant to Rule 915(b) of the Rules of Bankruptcy Procedure.

"If the district court should elect to remand the case to the bankruptcy court, then this court can proceed with at least some minimal assurance that it has summary jurisdiction. But it is foolhardy in view of the recent decision of the court of appeals to proceed without that assurance."

## III

The order thus entered finding the bankruptcy court to be without summary jurisdiction and transferring the action to the civil docket of the district court was in effect and substance a dismissal without prejudice from the bankruptcy court. As such, it was an appealable order. But no appeal was taken from the order.

■■■ This failure of either party to appeal from the order finding the bankruptcy court to be without summary jurisdiction now gives that finding *res judicata* effect.[2] For it is fundamental that the bankruptcy court has jurisdiction to determine its own jurisdiction and that, once that determination is made, it may be challenged only by direct appeal and not collaterally. "Supreme Court decisions have now made it clear that the bankruptcy court has power in the first instance to determine whether it

has jurisdiction to proceed. Moreover, any determination concerning its own jurisdiction, even though erroneous, is *res judicata* in a subsequent collateral proceeding. These principles apply even if the question of jurisdiction was not raised; and they apply to orders of the referee as well as to those of the judge." 1 Collier on Bankruptcy ¶ 2.05, p. 150 (1978). Thus, the district court, after the time for appeal had run out, had no jurisdiction to re-determine the jurisdiction and power of the bankruptcy court. Its jurisdiction to consider jurisdiction was limited, under the foregoing principles, to determining its own jurisdiction. There being no direct attack by appeal upon the bankruptcy court finding, the district court proceedings, as to bankruptcy court jurisdiction, can be regarded only as collateral proceedings. This court's referring in its prior order to the possible future remand by the district court was predicated on the assumption that a timely appeal would be filed.

## IV

Nevertheless, by means of its order of May 15, 1981, the district court remanded this action to the bankruptcy court by means of a *sua sponte* collateral attack on the bankruptcy court's finding itself to be without summary jurisdiction. The order of remand contained the following considerations:

"In its order of transfer, the bankruptcy court noted that defendant's original an-

2. Thus, in *In re Sterling*, 125 F.2d 104 (9th Cir. 1942), it was held to be reversible error for the district court to hold, after the time for appeal had run out, that the referee in bankruptcy did not have jurisdiction. See also 1 Collier on Bankruptcy para. 2.05, p. 151, n. 4 (1978); *Mueller v. Elba Oil Co.*, 21 Cal.2d 188, 130 P.2d 961, 971 (1942) (which is also to the effect that "Jurisdiction is but the power to hear and determine and does not depend upon the correctness of the decision made."). "It is now firmly settled that upon general reference the referee acts as a court of bankruptcy, except as to those matters which the Act or the Bankruptcy Rules reserve to the judge alone." 2A Collier on Bankruptcy para. 38.02, n. 18, pp. 1397–1398 (1978). And see *In re Hawks*, 471 F.2d 305, 307 (4th Cir. 1973) ("When the appellant

failed to object to the Referee's Order ... and when it failed within the ten days allowed by statute to petition for review of that order of the Referee sustaining the jurisdiction to entertain the wife's petition ..., that order became final and no longer subject to appeal or collateral attack."); *Arizona Power Corp. v. Smith*, 119 F.2d 888, 890 (9th Cir. 1941); 2A Collier on Bankruptcy para. 39.29, pp. 1540.5, 1540.6 (1978) ("If an appeal of the referee's order is not taken, that order has the force and effect of an order of the district court and is *res judicata* as to the merits. The parties' right to complain of the order is effectively lost, except for possible reconsideration by the referee himself, and the order is *not subject to collateral attack in the district court*." (Emphasis added.)).

swer prays to be dismissed and stated that 'at most' defendant's prayer created some ambiguity whether jurisdiction was being objected to. This Court finds that the convention of pleading exercised by defendant raises no such ambiguity. There is no stated ground for dismissal, and there is no hint of an assertion of a lack of jurisdiction.

"Defendant also filed an 'amended' answer to the first amended complaint. Like the original answer, it includes a prayer to be discharged, but no objection to the court's jurisdiction. No case law support has been located for the proposition that the customary request for dismissal of defendant on grounds other than jurisdiction constitutes an objection to jurisdiction. The weight of authority certainly favors regarding an answer such as the one filed in this case as waiver or consent to summary proceedings in the bankruptcy court. See e. g., *In re J. S. Mobile Homes*, 434 F.2d 1294 (9th Cir. 1970); *Guardian Title Co. v. Sulmeyer*, 417 F.2d 1290 (9th Cir. 1969); *Finkelstein v. Keith Fabrics, Inc.*, 278 F.2d 635 (5th Cir. 1960); *Coffman v. Cobra Mfg. Co.*, 214 F.2d 489 (9th Cir. 1954), cert. denied, 348 U.S. 912 [75 S.Ct. 291, 99 L.Ed. 715] (1955); *In re Warren*, 387 F.Supp. 1395 (S.D.Ohio 1975).

"In this case defendant not only did not object to jurisdiction in his answer, it also presented its case on the merits to the bankruptcy court. Moreover, defendant, who received notice that its failure to respond to this Court's show cause order would be construed to be consent to the jurisdiction of the bankruptcy court, has failed to respond."

V

In transferring this action to the district court which, it appears, almost certainly has idependent federal jurisdiction,[3] this court had hoped that the twin goals of justice and efficiency might be served by litigation of this case on the merits in the forum where the specter of possible lack of jurisdiction of the trial court would not always lurk in the background.

But, now, having been unable to accomplish that desirable result, this court must do what it can possibly do to ensure a decision on the merits of this action.

As stated above, however, this court disagrees that it can now take jurisdiction in the absence of a finding made by the district court on *direct appeal* reversing the former finding of this court. In the absence of such a reversal on *direct appeal*, the former finding of this court now has a *res judicata* effect currently and cannot be changed by this court.

Even if there could now be imagined to reside in this court some power *sua sponte* to alter or amend its former judgment (which there is not[4]), this court could not, on the facts and law before it, with good conscience disturb its prior finding that it is without summary jurisdiction. It is too simple to note that the answer of the defendant in this action requested "discharge" rather than "dismissal" and reverse the finding on that ground. For the encyclopedic authorities give "dismissal" as one of the alternative meanings of "discharge."[5] And "discharge," in civil practice, has long carried the meaning of the

---

3. If the trustee acts appropriately, he may still avail himself of this jurisdiction. See note 7, *infra*.

4. If the court is *sua sponte* to alter or amend its prior judgment, it must do so within ten days. 11 Wright and Miller, Federal Practice and Procedure para. 28.13.

5. See Black's Law Dictionary 549 (West 1968) ("DISCHARGE. To release ... liberate ... annul ... unburden; disincumber; dismiss ..."). " 'To discharge' means 'to dismiss,' 'to get rid of.' " *The Losmar*, 20 F.Supp. 887, 891 (D.Md.1937). It may be true, as this court has

previously noted, that, "at most," an ambiguity is created as to whether summary jurisdiction is being objected to. But that ambiguity, in the light of the holding in the *Citizens* case and the specific ruling in *Gill v. Phillips*, 337 F.2d 258, 262, 263 (5th Cir. 1964), that "(c)onsent should be inferred only from a clear manifestation by the adverse party that he is submitting a particular issue to the summary jurisdiction of the referee for determination," make of this ambiguity a barrier to the exercise of summary jurisdiction which is not readily overcome. And see note 6, *infra*.

judicial action which cancels, quashes, or dismisses the court's initial process.[6] So the word is at least ambiguous in this regard and, in context, it is construable as a request for dismissal, *inter alia*, for lack of jurisdiction. The authority of *Gill v. Phillips*, 337 F.2d 258 (1964), continues to be cited to the effect that a finding of summary jurisdiction can be made only on an unambiguous record. *In re Cedar Valley Bandag, Inc.*, 11 B.R. 36, 38 (Bkrtcy.1981). And those authorities appear to be reinforced by the holding of the United States Court of Appeals for the Eighth Circuit in *In re Citizens Loan and Savings Company, supra.*

## VI

Nevertheless, on the theory that the current holding of this court of absence of summary jurisdiction may be appealed[7] this court will make written findings based upon the hearing[8] which was conducted before this court entered its order transferring this action to the district court under Rule 915(b), *supra.* In this manner, if the finding of this court as to jurisdiction is reversed on a proper direct appeal, then the merits can be reviewed, thus perhaps saving another remand.

**6.** See Black's Law Dictionary 550 (West 1968): "To discharge a rule, an order, an injunction, a certificate, process of execution, or in general any proceeding in a court, is to cancel or annul it, or to revoke it, or to refuse to confirm its original provisional force." Thus, to be discharged in a civil suit may well mean the annulling by dismissal of the complaint and the summons issued upon it.

**7.** There remains some doubt as to whether the finding of the absence of summary jurisdiction, now made nearly seven months ago, remains appealable simply because it is reasserted in this judgment. In view of this, as an alternative to appealing this dismissal, it is open to the trustee to file this action as a new action in the federal district court (or in a state court of competent jurisdiction) under the provisions of section 70(e) of the Bankruptcy Act. In footnote 3 of the order of January 13, 1981, transmitting this action to the civil docket of the district court, the bases of jurisdiction under that section were set out. This, of course, may conceivably run some risk of running into a defense of the statute of limitations, a risk

## VII

### *Findings of Fact and Conclusions of Law on Merits*

Before this court issued its order transferring this action to the civil docket of the district court, it had drafted the following findings of fact and conclusions of law which are now incorporated into this judgment:

"FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DIRECTING THE DEFENDANT TO TURN OVER THE SUM OF $1,545.00 PLUS INTEREST TO THE PLAINTIFF TRUSTEE IN BANKRUPTCY

"Hugh A. Miner, Esquire, the trustee herein in bankruptcy has filed his complaint for the turnover to him for the sum of $1,545.00, constituting the purchase price of a certain machine delivered to the defendant, but not paid for.

"Therefore, on September 19, 1980, the court entered its order setting a hearing on the merits of the action for October 17, 1980, in St. Joseph, Missouri. At that time and place, the trustee herein in bankruptcy appeared personally and as his own counsel. The defendant appeared by counsel, Philip Eveloff, Es-

which is seemingly obviated by appeal of this judgment (which, in turns, runs the risk of being untimely). All of these pitfalls might have been avoided had the matter been processed on its merits in the district court.

**8.** In its order of remand, the district court comments that this hearing must necessarily be construed as a hearing of the merits. In view of the other ambiguities which are relevant to the matter of consent jurisdiction, that may not be so. For the court is required to conduct a hearing on the issue of jurisdiction which, in most imaginable instances, is of about the same nature and scope as a hearing on the merits. "In all cases where the summary power of the bankruptcy court is disputed, a preliminary inquiry is necessary to ascertain whether or not the requisites for summary jurisdiction ... are present, and so to determine whether or not the court may proceed further." 2 Collier on Bankruptcy para. 23.07, p. 520 (1976).

quire. The parties thereupon agreed by their respective counsel to submit this action for decision on the sole basis of the deposition of Dale K. Felumb taken in the presence of both counsel on October 10, 1980.[9]

"The testimony of Mr. Felumb in the deposition was that, in the year 1975, he was the manager of United Tractors, Inc.; that, at that time, United Tractors, Inc., had a board of directors which included Garth Sharp, Tom Ward, Lois Felumb, and Dale Felumb; that, at the time, United Tractors, Inc., owned a Sun Machine, 'a machine that analyzes motors in vehicles'; that that machine was sold to the Coffman Motor Company; that the Coffman Motor Company was later 'taken over' by the defendant, Sharp Ford-Mercury, Inc., so that, when the Sun Machine was delivered, it was delivered directly to the defendant Sharp Ford-Mercury, Inc.; that the sale price was $1,545.00; that the machine was a used machine, some two years old, for which United Tractors paid $2,000.00 when it was new; that it was in near perfect condition when delivered to the defendant 'because we hadn't used it too much'; that, at the time of delivery of the Sun Machine to the defendant, Garth Sharp was one of the owners of the defendant as well as, as noted above, an incorporator of United Tractors, Inc.; that the purchase price was supposed to be paid by the defendant to United Tractors, Inc., and '[t]he check was made from Sharp Ford-Mercury, but Garth Sharp intercepted it and kept it.' (tr. 15); and that, to Dale Felumb's knowledge, the bill has never been paid.[10]

"The defendant did not adduce any evidence, although granted an explicit opportunity to do so, to contradict the foregoing testimony of Dale K. Felumb. Rather, the defendant asserts that the documentary evidence, i. e., the bill memorializing the purchase of the Sun Machine from United Tractors, Inc., is inadmissible for lack of a proper foundation. This argument does not benefit the defendant's position, for the witness Dale K. Felumb has testified from his independent personal knowledge that he knew the fact of the sale, the sale price, and that, to his knowledge as general manager of the corporation which is now bankrupt, no payment of the sale price has been made. His testimony as to his independent knowledge of these facts is not barred by the so-called 'best evidence' rule, for his testimony is not of the contests of any document, but rather of events which he has observed.[11] Further, his testimony to the effect that, so long as he served as general manager, no payment was received and that, on one occasion, Garth Sharp prevented payment, is sufficient to make a prima facie case of non-payment and thereby place upon the defendant the burden of producing evidence of payment.[12] That burden has not been sustained and judgment must therefore be entered for the plaintiff. Accordingly, it is hereby

"ORDERED that the defendant forthwith and with reasonable dispatch turn over to the plaintiff the sum of $1,545.00

9. Counsel further agreed that the court might consider the testimony in the deposition as if it were made orally before it in open court.

10. Mr. Felumb was a director during the time periods in question, but does not purport to have personal knowledge of all the operations. His testimony is therefore not conclusive on the fact of payment *vel non*; but it is some evidence of non-payment. And payment is an affirmative defense to be pleaded and proved by the defendant. See Rule 8(b) of the Federal Rules of Procedure.

11. "The 'best evidence' rule, embodied in Fed. R.Evid. 1002, comes into play only when the *terms* of a *writing* are being established and an attempt is made to offer secondary evidence, i. e., a copy, to prove the contents of the original writing. The rule is not applicable when a witness testifies from *personal knowledge* of a matter, even though the same information is contained in a writing." *D'Angelo v. United States*, 456 F.Supp. 127, 131 (D.Del.1978), affirmed, 605 F.2d 1194, 1197 (3d Cir. 1979) (Emphasis in original.)

12. See note 10, *supra*.

plus interest at the appropriate rate[13] from October 26, 1975."

## VIII

Now, however, this court may only exercise its jurisdiction to dismiss the action. Thus, it is left open to the trustee to appeal the dismissal and thereby obtain a decision on the merits. This must necessarily be so even if this court could consider the fact that the defendant did not respond to the district court's order directing it to show cause why the action should not be remanded to this court. Rather than an expression of unequivocal consent, the failure to respond only heightens and emphasizes the ambiguity which already existed.

## IX

All that is here done is in the good faith hope that this action can, in keeping with applicable jurisdictional principles, be determined, in the interest of justice, on its merits. If it were simply desired by this court to dispose and "get rid of" this action without suffering the ignominy of reversal on appeal, it could exercise its discretion to remit jurisdiction of this action to a court of concurrent jurisdiction, a discretion which may be exercised even if the bankruptcy court is to be deemed to have jurisdiction.[14] But the parties, or either of them, should be granted the opportunity to appeal the dismissal with the hope that review of the foregoing findings and conclusions might result in a decision on the merits if this court's finding of absence of summary jurisdiction is reversed on a *proper direct appeal* therefrom. For, to accept jurisdiction under these circumstances would be to accede to the principle that a bankruptcy court's finding as to its own jurisdiction may be reviewed any time after the time for taking on appeal has run out and summarily reversed. Any stability of the bankruptcy court's rulings and judgments would be undermined and its effectiveness as a court would pass out of existence.[15]

## X

It is therefore, in accordance with the foregoing principles,

ADJUDGED that this action be, and it is hereby, dismissed for lack of jurisdiction.[16]

13. The statutory rate applicable is 6% per annum. See section 408.020 RSMo, later amended at a time which is applicable in 1979 and thereafter. It makes the statutory rate 9%.

14. "(T)here is a limited discretion available to a bankruptcy court to require matters to be litigated in state courts even where the jurisdiction exists in the bankruptcy court." *In re Axton*, 641 F.2d 1262, 1273 (9th Cir. 1981), and cases there cited.

15. To prevent this result is perhaps the reason for the provisions for unreviewable abstention in the new Bankruptcy Code. See section 305, Title 11, United States Code, and section 1471(d), Title 28, United States Code.

16. The order of the district court remanding this action to the bankruptcy court contained citations of several cases purporting to stand for the proposition that summary jurisdiction was held to be proper when "an answer such as the one filed in this case" was involved. A review of those cases demonstrates that not one is considered to have involved an answer requesting to be "discharged" from the complaint on file.